No. 89-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

SANDY MITCHELL,

        Plaintiff and Appellant,

-vs-

UNIVERSITY OF MONTANA, a branch of the
Montana University System, a public
entity; Its President, NEAL J. BUCKLEW;
and KAY COTTON in his capacity as controller
and as an individual,

        Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Peter Michael Meloy; Meloy Law Firm, Helena, Montana

    For Respondent:

        John O. Mudd; Garlington, Lohn & Robinson, Missoula,
Montana

Submitted on Briefs: Oct. 20, 1989

Decided: December 18, 1989

Filed

FILED

'89 DEC 18 PM 1 55

ED SMITH CLERK
MONTANA SUPREME COURT

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiff Sandy Mitchell appeals the order of the Fourth Judicial District Court, Missoula County, granting summary judgment to the defendants University of Montana, Neal J. Bucklew, and Kay Cotton in her tort action for breach of the implied covenant of good faith and fair dealing and wrongful discharge. The District Court granted summary judgment based on the immunity provisions of § 2-9-111, MCA. We reverse the District Court and remand the case for further proceedings.

Mitchell raises the following issues on appeal:

(1) Did the District Court err in determining that the University of Montana and its employees are immune from suit under § 2-9-111, MCA?

(2) Does the legislative history of § 2-9-111, MCA, indicate an intent only to immunize legislative bodies for acts or omissions arising solely out of legislative functions?

Mitchell is a certified public accountant. She was employed by the University of Montana beginning in 1978. Prior to her termination in 1981, Mitchell worked as an accounting supervisor in the Controller's office of the University.

Mitchell alleges the claim in this matter arose from a long time dispute between Mitchell and the University controller, defendant Cotton, beginning with his tenure as controller. She alleges that this dispute was later compounded when Mitchell competed directly with Cotton for the controllers job.

On October 9, 1981, Mitchell received a letter of termination from Cotton. She alleges that "the termination was made without just cause, without notice and without warning, verbal or written, with respect to her job

performance." (Amended Complaint, p. 2, para. IV.) Mitchell appealed her termination through the University Grievance Committee. The Committee found the termination was unwarranted and recommended to the University President and Cotton that Mitchell be reinstated.

In compliance with the recommendation, Cotton reinstated Mitchell, transferring her to a new, allegedly more difficult department. Mitchell alleges that "[d]efendants knew that Plaintiff's new position was fraught with potential for error, that she would make mistakes and they would have cause for consummating the termination effort which failed in 1981." (Amended Complaint. p.2, para. V.)

On February 22, 1983, the defendants terminated Mitchell from her employment a second time. Once again she brought a grievance before the Committee, however this time the Committee found just cause for the termination. After exhausting her possible remedies under administrative grievance procedures, Mitchell filed this lawsuit on March 22, 1984.

In her amended complaint, Mitchell alleges that in "[r]elying on the representations of the Defendants that she would be treated as any other employee, in good faith . . . and not experience retaliation from the filing of her initial grievance, she accepted the difficult task of administering the new program." (Amended Complaint, p.3, para. VI.) She contends that because of the length of her satisfactory service, her reinstatement in 1981, and periodic merit salary increases, there was an implied promise by the defendants that she would not be terminated without just cause. Thus, Mitchell alleges that in terminating her employment the defendants breached the covenant of good faith and fair dealing implied in the employment relationship.

3

Defendants assert that the 1983 termination was based on just cause. After a lengthy period of discovery, the defendants filed a motion for summary judgment on February 16, 1989, asserting three grounds as the basis of the motion: (1) that all the defendants are immune from suit, (2) that Montana law does not permit judicial review of routine personnel decisions of the Board of Regents and that even if those decisions are subject to review they are not subject to review by a jury, and (3) the pleadings and undisputed facts show that defendants did not breach their obligation to deal with the plaintiff in good faith. On April 27, 1989, the trial court denied the motion.

On May 12, 1989, we handed down our decision in Peterson v. Great Falls School District No. 1 and A (Mont. 1989), 773 P.2d 316, 46 St.Rep. 880. The defendants renewed their motion on May 15, arguing that Peterson was dispositive of this case and granted immunity to all the defendants. The trial court granted defendants' motion on May 23, 1989, solely on the grounds of the immunity provided by the statute. Mitchell now appeals the District Court's May 23 order granting summary judgment, raising the aforementioned issues.

I.

The immunity question presented here can be determined from a reading of the plain language of § 2-9-111, MCA. The statute provides:

> 2-9-111.  Immunity from suit for legislative acts and omissions.
>      (1)   As used in this section: (a)   the term "governmental entity" includes the state, counties, municipalities, and school districts; (b)   The term "legislative body" includes the legislature . . . and any local governmental entity given legislative powers by statute, including school boards.

4

(2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

(4) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

Section 2-9-111, MCA. (Emphasis added.)

Defendants argued in their motion and now on appeal that the Board of Regents the controlling public body of the University of Montana, is the legislative body of the Montana University System, and that President Bucklew and Cotton are officers and agents of that legislative body. Thus defendants contend that pursuant to our decisions in Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145, 45 St.Rep. 1218, and Peterson, § 2-9-111, MCA, clearly grants immunity to the defendants.

We disagree. The Board of Regents is not a "local governmental entity given legislative powers by statute" and thus not a "legislative body" as contemplated by the language of subsection (1). One meaning of "local governmental entity" can be found at Article XI, Section 1 of the 1972 Constitution:

Section 1. Definition. The term "local government units" includes, but is not limited to, counties and incorporated cities and towns. Other local government units may be established by law.

Title 7 of the Montana Code Annotated "Local Governments", deals generally with the powers, characteristics, and operation of local government. Nowhere in this title is the

5

Board of Regents or the university system discussed within the context of being a local government entity or unit. Rather, the Board of Regents and the Montana University System is authorized by Article X, Section 9(2) and is controlled by the provisions of Title 20, Chapter 25, MCA. The Board of Regents has authority over the six units of the Montana University System located statewide. Clearly, the Regents are not a local governmental entity as contemplated by § 2-9-111, MCA.

Respondent argues that such an interpretation of subsection (1) of the statute, defining legislative bodies as exclusively the State legislature or local governmental entities with statutory powers, changes the plain meaning of the word "includes" as written in the statute to a very different meaning: "is limited to". We fail to see any error with this construction. If so intended, the legislature could have easily used the phrase "includes, but is not limited to" in defining governmental entities. Because the legislature chose not to use such language, we apply the familiar maxim of statutory construction: expressio unius est exclusio alterius. (The expression of one thing is the exclusion of another.) Furthermore, this construction of subsection (1) is consistent with our decision in B. M. v. State (1982), 200 Mont. 58, 649 P.2d 425, 33 A.L.R.4th 1157, where we held that it is "our duty to strictly construe any attempted governmental immunity--that is, every act expanding statutory immunity must be clearly expressed." B.M, 649 P.2d at 427.

## II.

In light of our holding above, we need not discuss the second issue raised by Mitchell on appeal. The Board of Regents is not a local governmental entity, thus no immunity is afforded by the statute in this case.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices