No. 03-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 17

HARTMUT and INGA BAITIS

       Plaintiffs and Appellants,

  v.

THE DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula, Cause No. DV-02-34,
                The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

       Patrick Dougherty, Worden Thane P.C., Missoula, Montana

       For Respondent:

       Michele R. Crepeau, Montana Department of Revenue, Special Assistant
       Attorney General, Helena, Montana

                       Submitted on Briefs:  August 28, 2003

                       Decided:  January 28, 2004

Filed:

                                    Clerk

Justice John Warner delivered the Opinion of the Court.

## I. INTRODUCTION

¶1     The District Court for the Fourth Judicial District, Missoula County, granted the Montana Department of Revenue's Motion for Summary Judgment denying the Baitis' relief. The Baitis' primary claim is that § 15-30-121(1)(b), MCA, allows them to deduct their federal self-employment taxes when calculating net income on their Montana state income tax return. Alternatively, the Baitis' claim that if they are not permitted to deduct their self-employment taxes, then the Department of Revenue should have adopted a rule explaining the Department's rationale for the disallowance.

¶2     We affirm the District Court.

¶3     We address the following issues on appeal:

¶4     1. Whether the self-employment taxes collected under § 1401 of the Internal Revenue Code are deductible under § 15-30-121(1)(b), MCA, in the calculation of net income for state income tax purposes.

¶5     2. Whether the Department of Revenue has an obligation under § 2-4-101 et seq., MCA, to formally adopt a rule systematizing its longstanding, informal policy which disallows the federal self-employment tax as a deduction under § 15-30-121(1)(b), MCA.

## II. FACTUAL AND PROCEDURAL BACKGROUND

¶6     The parties have stipulated that there are no facts in dispute in this matter. All agree that the two issues of law set forth above are the only issues for decision. Hartmut and Inga Baitis (the Taxpayers), claimed an income tax deduction on their 1995 Montana income tax return for the amount they paid in federal income taxes in 1995. This figure included the

2

amount they paid for their federal self-employment tax liability. The Montana Department of Revenue (the Department), disallowed the portion that was claimed for the self-employment tax liability. The Taxpayers contested the disallowance and the Department's hearing examiner affirmed the Department's decision. From there, the Taxpayers appealed to the State Tax Appeal Board and then to the District Court of Missoula County. Both of those bodies also affirmed the Department's decision. The Taxpayers now seek review in this Court.

## III. STANDARD OF REVIEW

¶7 The standard this Court employs to review a district court's conclusions of law is whether the district court's interpretation of the law is correct. A district court's grant of summary judgment is reviewed *de novo*. *Vitullo v. IBEW, Local 206*, 2003 MT 219, ¶ 9, 317 Mont. 142, ¶ 9, 75 P.3d 1250, ¶ 9.

¶8 The standard of review for administrative decisions of state agencies is set forth at § 2-4-704, MCA. In pertinent part, the statute reads:

> The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
> (a) the administrative findings, inferences, conclusions, or decisions are:
>     (i) in violation of constitutional or statutory provisions;
>     (ii) in excess of the statutory authority of the agency;
>     (iii) made upon unlawful procedure;
>     (iv) affected by other error of law;
>     (v) clearly erroneous. . .;
>     (vi) arbitrary or capricious. . . .

## IV. DISCUSSION

### Issue One

¶9 The Taxpayers spend much effort attempting to persuade us that the self-employment

tax is part of the federal income tax, and is therefore deductible under § 15-30-121(1)(b), MCA. Section 15-30-121(1)(b) allows a Montana state taxpayer to deduct from his computation of net income, "federal income tax paid within the tax year." The self-employment tax code sections, §§ 1401-1403, are located in Subtitle A of the Internal Revenue Code (I.R.C.), which is entitled "Income Taxes." The Taxpayers believe that the physical location of the self-employment code sections is dispositive of the issue. They believe that Treas. Reg. § 1.1401-1 supports their contention. That section reads in pertinent part:

> This tax shall be levied, assessed, and collected as part of the income tax imposed by subtitle A of the Code . . . . Since the tax on self-employment income is part of the income tax, it is subject to the jurisdiction of the Tax Court of the United States to the same extent and in the same manner as the other taxes under subtitle A of the Code.

¶10 The Department does not dispute that the self-employment tax is imposed upon a portion of a self-employed person's income. Neither does the Department dispute that the federal self-employment taxes are levied, assessed, and collected along with the normal federal income taxes. The Department does dispute the significance these facts have in relation to the nature of the taxes themselves. According to the Department, the nature and purpose of a tax is what defines a tax. The argument is then that the self-employment tax is in the nature of an employment tax, not an income tax. Its purpose is not to tax the privilege of pursuing personal wealth, as is an income tax. Its purpose is to fund the Federal Old-Age, Survivors, and Disability Insurance Trust Fund (OASDI), which in turn will provide a self-employed person a substitute for earned income when he is no longer able to remain self-employed.

4

¶11     We agree with the Department for the following reasons. First, we concur in the Department's assessment that the federal income tax and the federal self-employment tax are distinct entities, regardless of their conjoined collection procedures. Second, we agree with the District Court's observation that the state of Montana has authority to interpret its own tax code in the manner it so chooses, without being bound by the vagaries of the federal tax code. We address each reason in turn.

¶12     *Varied Histories and Purposes of the Income Tax and the Social Security Tax*

¶13     Congress passed the first federal income tax in 1861. 37 Cong. ch. 45, 12 Stat. 292, 309. It provided for levy and collection of three percent (we should be so lucky) of each individual's annual income, from whatever source derived. This tax law was renewed several times between 1861 and 1872, when it expired. 41 Cong. ch. 255, 16 Stat. 256. These original income tax acts grew out of the Civil War, were considered legitimate as having been passed in a time of extraordinary exigency, and were "part of the system of taxing incomes, earnings, and profits adopted during the late war, and abandoned as soon after that war was ended as it could be done safely." *Pollock v. Farmers' Loan & Trust Co.* (1895), 157 U.S. 429, 573, 15 S.Ct. 673, 686, 39 L.Ed. 759, 816, *superseded by U.S. Const. amend XVI*. The income tax was brought back in 1894. 53 Cong. ch. 349, 28 Stat. 509. But in 1895, with the United States at peace and with no national crises portending, the U.S. Supreme Court declared the income tax invalid as not following the constitutionally mandated rules of apportionment and uniformity. *Pollack v. Farmers' Loan & Trust Co.* (1895), 158 U.S. 601, 637, 15 S.Ct. 912, 920-921, 39 L.Ed. 1108, 1126, *superseded by U.S. Const. amend XVI*. In 1909, Congress was again poised to enact an income tax. Because

5

of the *Pollock* decisions, however, there was sure to be a problem with the tax in the courts. *Brushaber v. Union P.R.Co.* (1916), 240 U.S. 1, 18, 36 S.Ct. 236, 242-243, 60 L.Ed. 493, 501. To avoid this problem, President Taft proposed the Sixteenth Amendment, which was ratified in 1913. The Sixteenth Amendment to the U.S. Constitution nullified the holdings of the *Pollack* cases, and authorized the U.S. government to impose income taxes without regards to apportionment or population per state. Shortly after ratification of the Sixteenth Amendment, Congress enacted the Tariff Act of 1913, which included an income tax. 63 Pub. L. No. 16, 38 Stat. 114.

¶14     Since then, the word "income" itself has gone through several loose, court-made, definitions. In *Bowers v. Kerbaugh-Empire Co.* (1926), 271 U.S. 170, 174, 46 S.Ct. 449, 451, 70 L.Ed. 886, 888, the U.S. Supreme Court said income was "gain derived from capital, from labor, or from both combined . . . ." In *Comm'r v. Glenshaw Glass, Inc.* (1955), 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483, 490, the U.S. Supreme Court defined income as "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." While these definitions help explain various court rulings, it is almost beyond dispute that the working definition of income, at any given point in time, is whatever Congress says it is. Such wide latitude is based on the broad language of Internal Revenue Code § 61(a) which says, gross income is "all income, from whatever source derived . . . ." The U.S. Supreme Court is typically quick to defer to Congress' authority in this arena, stating in *Commissioner v. Schleier* (1995), 515 U.S. 323, 327, 115 S.Ct. 2159, 2163, 132 L.Ed.2d 294, 301, "We have repeatedly emphasized the 'sweeping scope' of [§61]." Whatever Congress' current definition of income may include, it is beyond question that

Congress can tax it, with very few exceptions. The well-accepted meaning of the phrase "income tax" is that it is a tax on the activity and privilege of obtaining income, justified by the needs of a state to equitably distribute the burden of paying for government. *New York ex rel. Cohn v. Graves* (1937), 300 U. S. 308, 313, 57 S.Ct. 466, 467, 81 L.Ed. 666, 670. It includes an unpleasantly large chunk of money every employee sees taken from his paycheck. I.R.C. § 1(a)-(d). It includes taxes on early or lump sum distributions from qualified retirement plans. I.R.C. §§ 72(t) and 402(e)(4)(D). It includes capital gains taxes, I.R.C. § 1(h), and various others. The common denominator amongst these taxes is that they all are imposed upon a person simply because that person makes money. The federal income tax, therefore, is a tax on earned, or acquired, or realized income, and is commonly known as such.

¶15     In 1935, Congress enacted the Old-Age, Survivors, and Disability Insurance program, also known as the Social Security Act, as a federal insurance policy for retired U.S. workers. 74 Cong. ch. 531, Pub. L. No. 271, 49 Stat. 620 (1935) (now codified at 42 U.S.C. 401  et seq.) It was designed to provide a substitute for earned income upon retirement, and in practice it provides monthly benefits to retired workers, their dependents, and their survivors. *Califano v. Boles* (1979), 443 U.S. 282, 283, 99 S.Ct. 2767, 2769, 61 L.Ed.2d 541, 544. Because it is an insurance program, workers are required to pay for their coverage via payment of "premiums." These "premiums" take the form of taxes paid by employers and employees under the Federal Insurance Contributions Act (FICA), I.R.C. §§ 3101-3128, and by the self-employed under the provisions of the Self-Employment Contributions Act (SECA), I.R.C. §§ 1401-1403.

¶16 The Social Security Act creates the Trust Fund and mandates that a portion of its funding comes from self-employment taxes. The Social Security Act specifically states that one-hundred percent of the funds collected via the self-employment tax are to be appropriated to the OASDI Trust Fund (how and whether this actually happens is a matter of much discussion). 42 U.S.C. § 401(a)(4). Internal Revenue Code §§ 1401-1403 impose the tax created by SECA, and establish the rates applicable to the self-employment tax. These tax rates are equivalent to the combined employee and employer rates imposed by FICA. This makes sense in the case of a self-employed person, since the employer and the employee are the same person. Because employers under FICA may deduct their portion of their employees' premiums as a business expense, Congress allows self-employed persons to deduct one-half of their SECA taxes as a business expense. I.R.C. § 164(f). But because Congress does not allow employees to deduct the payment of their own portion of the premiums, self-employed persons cannot deduct their own portion either.

¶17 This discussion highlights the historical and substantive differences between the federal income tax and the self-employment tax. Additionally, the weight of authority within the federal government leans in favor of a marked distinction between the two taxes. When considering the issue of where to place the self-employment tax provisions within the Internal Revenue Code, the House of Representatives determined that they should be "levied as one of the employment taxes" so that they could be administered accordingly. S. Rept. No. 1669 (1950), *reprinted in* U.S. Code Congressional Service, 81st Cong., Legislative History, at 3451 (1950). However, the Senate Finance Committee, when debating the same topic, recommended that the inclusion in Subtitle A was "[i]n the interests of simplicity for

taxpayers and economy in administration," and that the self-employment tax should be administered in all particulars as an integral part of the income tax. S. Rept. No. 1669 (1950), *reprinted in* U.S. Code Congressional Service, 81st Cong., Legislative History, at 3451 (1950). The Senate's version became the final version and since then, the courts have affirmed the Senate's intent. In *Clarke v. Commissioner* (1957), 27 T.C. 861, 862, the Tax Court stated that "[w]hile the self-employment tax . . . is collected along with the income tax, and is a tax over which [the Tax Court] has jurisdiction . . . it is not a part of the income tax itself but a part of the revenue raised to finance the benefits provided by the Social Security Act of 1935 . . . ." In *Chatterji v. Commissioner* (1970), 54 T.C. 1402, 1404, the Tax Court reaffirmed the distinction stating, "it is expedient to point out that while the self-employment tax provided in sections 1401 to 1403 . . . is collected together with the income tax and is a tax over which [the Tax Court] has jurisdiction . . . it is not a part of the income tax itself but a part of the revenue raised to finance the benefits provided by the Social Security Act of 1935 . . . ." In *Eanes v. Commissioner* (2000), T.C. Memo 2000-252, the Tax Court, fully cognizant of the location of § 1401 within the IRC, stated that,

> Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes . . . . Self-employment tax is a tax imposed by the United States Government for a special purpose; i.e., to fund Social Security and hospital insurance benefits . . . . Section 1401 imposes a tax on income earned from self-employment in order to fund the payment of Social Security and hospital insurance benefits to self-employed persons.

Additionally, The IRS' instructional pamphlet which explains how to calculate self-employment taxes begins like this:

> What is Self-Employment Tax? Self-employment tax is a social security and

9

Medicare tax primarily for individuals who work for themselves. It is similar to the social security and Medicare taxes withheld from the pay of most wage earners.

Internal Revenue Service, Self-Employment Tax, Publication 533 (2003). Finally, IRS Form 1040 itself distinguishes between the self-employment tax and the normal income tax. Lines 55-60 of Form 1040 are grouped together under a special heading entitled "Other Taxes." Within this grouping is found the self-employment tax.

¶18    Based on the foregoing, we conclude that the federal income tax and the federal self-employment tax are distinct entities, despite their co-location within Subtitle A of the Internal Revenue Code.

¶19    *Montana Can Interpret Its Tax Code To Suit Its Revenue Requirements*

¶20    Even if we were not persuaded that the federal income tax and the social security tax are distinct entities, in interpreting its own tax code, Montana is not bound by whatever the federal government's definition of "income tax" might be, as the Taxpayers suggest.   As stated by Chief Justice Fuller,

> In respect . . . to property, business, and persons, . . . [the States'] power of taxation . . . remains entire. . . . The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures . . . . That discretion is restrained only by the will of the people . . . . There is nothing in the Constitution which contemplates or authorizes any direct abridgement of this power by national legislation.

*Pollock*, 157 U.S. at 561, 15 S. Ct. at 682, 39 L.Ed. at 812, *superseded by U.S. Const. amend XVI, on a separate issue*. The statute in issue is a Montana state statute and the State of Montana has a prerogative to implement and interpret its own tax code as it chooses.

*Kentucky Union Co. v. Kentucky* (1911), 219 U.S. 140, 151, 31 S.Ct. 171, 176, 55 L.Ed. 137,

154, ("The State is left to choose its own methods of taxation and its form and manner of enforcing the payment of the public revenues").

¶21     In 1933 the Montana Legislature enacted a state income tax.  Section 2295.1-2295.34, RCM (1935).  At that time, the Legislature authorized the deduction of all federal taxes paid, in the calculation of net income.  Ch. 204, sec. 2295.8.  In 1950, the United States Congress enacted the Self-Employment Contributions Act.  I.R.C. §§ 1401-1403.  Shortly thereafter, in 1955, the Montana Legislature amended the revenue code to limit the allowable deduction to federal income tax paid.  Section 84-4906(b), RCM (1947).  The Legislature has not altered the language of that provision since the amendment in 1955.  Section 15-30-121(1)(b), MCA.     The Taxpayers allege that "at some unknown point in time, a person or persons unknown within the Department determined that the Federal self-employment income tax was not a Federal income tax . . . ."  Though the record is devoid of any definitive date on which the Department first excluded the self-employment tax from the deduction for income tax paid, it appears clear that the reason for this is that the Department has *never* allowed the self-employment tax to be taken as a below-the-line deduction.  At the very least, exclusion of the self-employment tax as a deduction has been the norm for over forty years and that fact has never been challenged in court until now.  The Department contends that this is because the Legislature, in enacting what is now § 15-30-121(1)(b), MCA, was utilizing the phrase "income tax" in its commonly understood form, i.e. taxes which all taxpayers pay and reconcile on their annual federal income tax return.  The Department, therefore, has always worked from that premise.

¶22     The Department's argument is persuasive.  A statute must be construed reasonably

11

and in a way that is best able to effectuate its purpose, rather than in a way which would weaken that purpose. *State ex rel. Davis v. State Bd. of Equalization* (1937), 104 Mont. 52, 64 P.2d 1057. It is unequivocal that the Legislature has the authority and responsibility to raise revenue for the State. Between 1933 and 1954, the Legislature allowed Montana taxpayers to deduct all of their federal taxes. But as Congress repeatedly created new taxes, this broad deduction would have come to have more impact on the State's budget. The Legislature responded with the 1955 amendments to the tax code, by limiting a Montana taxpayer's deduction to only federal income tax paid.

¶23    The Department's duty is to interpret and enforce the Legislature's fiscal enactments. Section 15-1-201, MCA. The Department is responsible for projecting revenues for the state budget. Also, the evidence is uncontroverted that the Department has never incorporated a deduction for the self-employment tax into the Department's forecast of projected revenues from individual income tax. Obviously, including a deduction where the Legislature has not expressly provided for one would have a significant impact on the state's budget. These facts support the Department hearing examiner's finding that the Legislature intentionally narrowed the allowable deduction for federal taxes to exclude therefrom the self-employment tax. This intentional narrowing leaves no room for an implied deduction for self-employment tax as suggested by the Taxpayers. This is a reasonable interpretation given "[t]he historic tendency of governments constantly to exact more money from the taxpayer pursuant to popular desire in furthering public activities . . . ." *O'Connell v. State Bd. of Equalization* (1933), 95 Mont. 91, 122, 25 P.2d 114, 122 (C.J. Calloway dissenting).

¶24    "It is presumed that the legislature is acquainted with the law; that it has knowledge

of the state of it upon the subjects on which it legislates; that it is informed of previous legislation and the construction it has received." *State ex rel. Davis v. State Bd. of Equalization* (1937), 104 Mont. 52, 64 P.2d 1057. The Legislature has acquiesced in the Department's interpretation of § 15-30-121(1)(b) for over forty years. It has had ample opportunity to correct any misinterpretation by the Department during that time. It has taken no action. We presume from this course of events that the Department has properly interpreted the law as written. When the Department has only the language of the Montana revenue code on which to base its interpretation of a specific code section, we will not disagree with the Department's interpretation if that interpretation is reasonable.

¶25 Words used in the statutes of Montana are to be construed according to the context in which they are found, and according to their normal usage, unless they have acquired some peculiar or technical meaning. Section 1-2-106, MCA. The duty of a judge is to look at the words of the statute and ascribe to them their plain meaning. Section 1-2-101, MCA. It is well-settled law that a tax deduction cannot be inferred or presumed, as deductions are authorized only under clear statutory provisions. *GBN, Inc. v. Montana Dep't of Revenue* (1991), 249 Mont. 261, 266, 815 P.2d 595, 597. In upholding the original Montana income tax as constitutional, this Court noted the difficulty surrounding attempts to precisely define the tax, stating, "there are reasons why [an income tax] might be classed as a property tax, and reasons why it should be classed as an excise tax. Volumes, in fact libraries, have been written in a vain endeavor to accurately classify the income tax." *O'Connell v. State Board of Equalization* (1933), 95 Mont. 91, 112, 25 P.2d 114, 118. In resolving the issue, however, the Court quoted approvingly from a scholarly article wherein the author stated that "[t]he

13

fundamental nature of the income tax is in short that it is an income tax and nothing else."

*O'Connell*, 95 Mont. at 113, 25 P.2d at 119, (quoting Prof. Robert C. Brown, *The Nature of the Income Tax*, Minn. L. Rev., January 1933). We agree with this assessment. The self-employment tax, while being a tax based on income, is in the nature of an employment tax. It is a social security tax, and is not an income tax as that term is commonly understood.

**Issue Two**

¶26 Whether the Department of Revenue has an obligation under § 2-4-101 et seq., MCA, to formally adopt a rule systematizing its longstanding, informal policy which disallows the federal self-employment tax as a deduction under § 15-30-121(1)(b), MCA.

¶27 Because we hold that the plain meaning of "federal income tax" as utilized in § 15-30-121(1)(b), MCA, does not include the federal self-employment tax, we do not need to involve ourselves in an analysis of issue two. The Department is not required to promulgate a rule explaining the denial of a tax deduction, when that deduction is not explicitly provided for within the language of the code.

**V. CONCLUSION**

¶28 The Taxpayers had the burden to demonstrate the existence of the claimed deduction. Section 26-1-401, MCA. They have not met their burden.

¶29 The District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE

14

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JAMES C. NELSON