DA 13-0547

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 212

WESTMORELAND RESOURCES INC.,

        Petitioner and Appellant,

    v.

DEPARTMENT OF REVENUE
OF THE STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 2012-304
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            W. Anderson Forsythe, Moulton Bellingham PC, Billings, Montana

        For Appellee:

            Charlena Toro, Amanda L. Myers, Special Assistant Attorneys General, Montana Department of Revenue, Helena, Montana

Submitted on Briefs:  May 8, 2014
Decided:  August 5, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Westmoreland Resources Inc. (WRI) appeals from the Order entered by the First Judicial District Court, Lewis and Clark County, Hon. Kathy Seeley presiding, determining that WRI may not deduct coal severance and gross proceeds taxes paid to the Crow Tribe (Tribe) to reduce the amount owing under Montana's Resource Indemnity Trust and Ground Water Assessment Tax (RITT). We affirm and restate the issue as follows:

¶2 *Did the District Court err by determining that WRI may not deduct taxes paid to the Tribe as "taxes paid on production" from the "contract sales price" when calculating the RITT?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 WRI mines coal owned by the Tribe on the Crow Reservation in south-central Montana, and pays coal severance and gross proceeds taxes to the Tribe. WRI collects money from purchasers of the coal as part of the f.o.b. mine gross revenue, as reported under statute to the Department of Revenue (Department), to pay these taxes. WRI also pays the RITT to the State. In February 2005, WRI filed a tax return with the Department for coal produced and sold at its Absaloka Mine, located on the Crow Reservation, during tax year 2004. On its return, WRI deducted the coal severance and gross proceeds taxes it had paid to the Tribe as "taxes paid on production" to calculate the "contract sales price" of the coal, against which the RITT is assessed. The Department disallowed WRI's deduction.

¶4 WRI filed a complaint with the State Tax Appeal Board, alleging that federal law preempted the assessment of the RITT on its Absaloka Mine, and alternatively alleging that the Department wrongfully denied its deduction for "taxes paid on production" to the Tribe. Later, WRI and the Department filed a joint petition for an interlocutory adjudication of a

2

substantive question of law with the District Court pursuant to §§ 15-2-304 and -305, MCA. The parties asked the court to determine whether WRI's coal severance and gross proceeds deduction was proper. The court held in favor of the Department, explaining that Montana law "does not allow [a] deduction for taxes paid to the Crow Tribe . . . ." WRI appeals.

## STANDARD OF REVIEW

¶5 "We review a district court's interpretation of a statute for correctness." *Blanton v. Dep't of Pub. HHS*, 2011 MT 110, ¶ 21, 360 Mont. 396, 255 P.3d 1229 (citation omitted).

## DISCUSSION

¶6 *Did the District Court err by determining that WRI may not deduct taxes paid to the Tribe as "taxes paid on production" from the "contract sales price" when calculating the RITT?*

¶7 The RITT assessed against coal producers is calculated as "0.4% of the gross value of product in excess of $ 6,250." Section 15-38-104(2)(b), MCA. "'[G]ross value of product' is determined by multiplying the contract sales price . . . by the tonnage produced." Section 15-38-125, MCA. "Contract sales price" is defined as follows:

> "Contract sales price" means either the price of coal extracted and prepared for shipment f.o.b. mine, *excluding that amount charged by the seller to pay taxes paid on production*, or a price imputed by the department under 15-35-107. Contract sales price includes all royalties paid on production, no matter how the royalties are calculated. However, with respect to royalties paid to the government of the United States, the state of Montana, or a federally recognized Indian tribe, the contract sales price includes 15 cents per ton. Contract sales price does not include the costs specific to the act of coal washing.

Section 15-35-102(5), MCA (emphasis added). In turn, "taxes paid on production" is defined as follows:

> "Taxes paid on production" includes *any tax paid to the federal, state, or local governments* upon the quantity of coal produced as a function of either the volume or the value of production and does not include any tax upon the value of mining equipment, machinery, or buildings and lands, any tax upon a person's net income derived in whole or in part from the sale of coal, or any license fee.

Section 15-35-102(11), MCA (emphasis added).[1]

¶8 The dispute in this case centers on whether the phrase "any tax paid to the federal, state, or local governments," within § 15-35-102(11), MCA, includes those taxes WRI pays to the Tribe. The answer to this question impacts the calculation of the "contract sales price" and, in turn, the amount owed to the State under the RITT. Understandably, WRI wants to deduct the taxes it pays to the Tribe from the "contract sales price" of the coal it mines and markets.

¶9 WRI argues that the plain language of § 15-35-102(11), MCA—defining "taxes paid on production"—is unambiguous and should be read to include the taxes it pays to the Tribe. WRI maintains that the purpose of this statute is to indicate "the type of taxes that are 'paid on production' by providing an illustrative list." According to WRI, the statutory definition does not omit obvious production taxes merely because such taxes are paid to an Indian tribe. WRI focuses on the statute's use of the term "includes," and cites various sources defining the term expansively: "'[t]he use of the word 'includes' suggests the list is non-exhaustive rather than exclusive,'" *U.S. v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005) (citations omitted); "'includes' generally signifies an intent to enlarge a statute's application, rather than limit it, and it implies the conclusion that there are other items includable, though not

specifically enumerated," *Bd. of Cnty. Comm'rs v. Bassett*, 8 P.3d 1079, 1083 (Wyo. 2000) (citations omitted). Therefore, WRI argues, § 15-35-102(11), MCA, "is not exclusive, but inclusive and not limiting."

¶10 The Department responds that § 15-35-102(11), MCA, does not authorize WRI to deduct taxes paid to the Tribe because "Montana law requires a deduction to be explicitly established and strictly construed." The Department argues that to be deductible, a statute must clearly allow the expense as a deduction, citing *Baitis v. Dep't of Revenue*, 2004 MT 17, ¶ 25, 319 Mont. 292, 83 P.3d 1278; *Cyprus Mines Corp. v. Madison Cnty.*, 172 Mont. 116, 118, 560 P.2d 1342, 1343 (1977); *GBN, Inc. v. Mont. Dep't of Revenue*, 249 Mont. 261, 266, 815 P.2d 595, 597-98 (1991). The Department states that § 15-35-102(11), MCA, does not explicitly reference tribal governments, and therefore, the taxes WRI paid to the Tribe are not "taxes paid on production" for purposes of calculating the "contract sales price." The Department also cites *Mitchell v. Univ. of Mont.*, 240 Mont. 261, 265, 783 P.2d 1337, 1339 (1989), for the proposition that when the Legislature uses the term "includes," this Court will not ordinarily construe it expansively to mean "includes, but is not limited to."

¶11 "When interpreting a statute, our objective is to implement the objectives the legislature sought to achieve." *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499 (citation omitted). We ascertain legislative intent from the plain meaning of the words used in a statute. *Mont. Vending, Inc.*, ¶ 21. We endeavor "to avoid a statutory construction that renders any section of the statute superfluous or fails

---

[1] Monies collected under the RITT are allocated to the resource indemnity trust fund, § 15-38-201, MCA, and are then expended pursuant to the directives of § 15-38-202, MCA.

to give effect to all of the words used." *Mont. Trout Unlimited v. Mont. Dep't of Nat. Res. & Conserv.*, 2006 MT 72, ¶ 23, 331 Mont. 483, 133 P.3d 224 (citation omitted). Under tax law, "[i]t is well-settled law that a tax deduction cannot be inferred or presumed, as deductions are authorized only under clear statutory provisions." *Baitis*, ¶ 25 (citation omitted). An expense may be deducted "only when the legislature specifically establishes the deduction." *In re Est. of Langendorf*, 262 Mont. 123, 126, 863 P.2d 434, 436 (1993) (citation omitted). A revenue statute authorizing a deduction must be construed with specificity rather than the more liberal construction we generally apply to revenue laws. *Cyprus Mines Corp.*, 172 Mont. at 118, 560 P.2d at 1343 (citation omitted).

¶12 Section 15-35-102(11), MCA, makes no mention of taxes paid to tribal governments. Although WRI attempts to downplay this omission, it is important in this case. As noted above, tax deductions must be clearly authorized by the governing statute. Here, the Legislature authorized the deduction of taxes paid to "federal, state, or local governments," but not tribal governments. It is not this Court's duty to insert what has been omitted from a statute. Section 1-2-101, MCA. Moreover, under "the canon *expressio unius est exclusio alterius*, we interpret the expression of one thing in a statute to imply the exclusion of another." *Dukes v. City of Missoula*, 2005 MT 196, ¶ 15, 328 Mont. 155, 119 P.3d 61 (citation omitted). A plain reading of § 15-35-102(11), MCA, demonstrates that the Legislature defined "taxes paid on production" as those taxes that are paid to a specified group of governing authorities, which does not include tribal governments.

¶13 Our holding in *Citizens for Balanced Use v. Maurier*, 2013 MT 166, 370 Mont. 410, 303 P.3d 794, upon which the District Court relied, is instructive. There, the Department of

Fish, Wildlife & Parks (DFWP) transported bison from a location near Yellowstone National Park to the Ft. Peck Reservation. *Maurier*, ¶¶ 3-4. Citizens for Balanced Use (CBU) subsequently filed suit, challenging the DFWP action and seeking to enjoin the bison transport. The district court entered a temporary restraining order and issued a preliminary injunction prohibiting DFWP from continuing with the transfer process. *Maurier*, ¶ 8. On appeal, we reversed the district court, finding that it erroneously interpreted § 87-1-216, MCA. *Maurier*, ¶¶ 16, 32. That statute provided, in pertinent part, that DFWP "'may not release, transplant, or allow wild buffalo or bison on any private or public land in Montana that has not been authorized for that use by the private or public landowner.'" *Maurier*, ¶ 13 (quoting § 87-1-216(4), MCA). We explained that the phrase "public or private land in Montana" could not be read to restrict the placement of bison on tribal lands because the statute "does not expressly mention tribal lands." *Maurier*, ¶ 16. We found it persuasive that in other statutes, the Legislature "specifically referred to tribes or tribal land when it intended to do so." *Maurier*, ¶ 16.

¶14 As in *Maurier*, the Legislature did not mention tribal governments in § 15-35-102(11), MCA—the definition of "taxes paid on production." Notably, however, in 1983 the Legislature amended what is currently § 15-35-102(5), MCA—the definition of "contract sales price"—to include the following language: "with respect to royalties paid to the government of the United States, the state of Montana, or *a federally recognized Indian tribe*, the contract sales price includes . . . ." (Emphasis added.) Clearly, the Legislature could have amended § 15-35-102(11), MCA, in a similar fashion if it had wished to include taxes paid to tribal governments within the definition of "taxes paid on production."

7

Moreover, the Department's reliance on *Mitchell*'s application of the term "includes" is well placed here. "If so intended, the Legislature could have easily used the phrase 'includes, but is not limited to' in defining government entities." *Mitchell*, 240 Mont. at 265, 783 P.2d at 1339.

¶15 WRI argues that even if § 15-35-102(11), MCA, limits the deduction to taxes paid to federal, state, and local governments, "local governments" is a broad category that necessarily encompasses the Tribe because it is a government and is located in Montana. WRI cites two statutes that include tribal governments within the definition of "local government": § 90-6-701(3)(b), MCA ("'Local government' means an incorporated city or town, a county, a consolidated local government, a tribal government . . . ."); and 6 U.S.C. § 101(11)(B) ("The term 'local government' means—an Indian tribe or authorized tribal organization . . . .").

¶16 However, the fact that there are instances where the Legislature or U.S. Congress has defined "local government" to include a tribal government supports the District Court's conclusion that the Legislature specifically refers to tribal governments when it intends to include them in a definition of "local government." A cursory search of the MCA reveals various instances where local governments and tribal governments are defined separately or exclusively: § 90-1-201(f)-(g), MCA ("'Local government' means a county, consolidated government, city, town, or district or local public entity with the authority to spend or receive public funds. . . . 'Tribal government' means any one of the seven federally recognized tribal governments of Montana and the Little Shell band of Chippewa Indians."); § 60-4-202(2)(a)(i), MCA ("The department may sell an interest in real property without a

8

public auction directly to: . . . a federal, state, tribal, or local government"); § 85-1-605, MCA ("The department may recommend . . . that coal severance tax bonds be authorized . . . to provide financial assistance to a . . . political subdivision or local government body of the state . . . or to a tribal government."); and *compare* § 15-35-102(5), MCA ("the government of the United States, the state of Montana, or a federally recognized Indian tribe") *with* § 15-35-102(11), MCA ("the federal, state, or local governments").

¶17 Including tribal governments within the term "local governments" as used in § 15-35-102(11), MCA, would fly in the face of the plain and usual meaning of the words and produce an irrational construction given the separate references to "local governments" and "federally recognized Indian tribe[s]" contained within § 15-35-102, MCA, itself. Accordingly, we conclude that the term "local governments" as used in § 15-35-102(11), MCA, does not include tribal governments.[2]

¶18 Lastly, WRI argues that not allowing a deduction for the taxes it paid to the Tribe "directly conflicts with well-established authority respecting and acknowledging Indian Tribes as legitimate government entities with the authority to tax." WRI cites the Montana State-Tribal Cooperative Agreements Act, § 18-11-101, et seq., MCA, as "clear recognition by the State of the importance of tribal governments within Montana, as well as the State's desire to promote cooperation and economic development of Montana's tribes through direct

---

[2] WRI argues that there is nothing in the legislative history to suggest that the definition was adopted to exclude taxes paid to Indian tribes. However, because the plain language of the statute leaves no doubt about legislative intent, it is unnecessary to further consider legislative history. *State v. Johnson*, 2012 MT 101, ¶ 26, 365 Mont. 56, 277 P.3d 1232 (citation omitted) ("'[T]ere is no reason for us to engage in a discussion of the legislative history to construe [a] statute when we have determined that the language of the statute is clear and unambiguous on its face.'").

tribal taxation." WRI points out that the federal government aims to promote and encourage tribal self-government and self-sufficiency, citing *N.M. v. Mescalero Apache Tribe*, 462 U.S. 324, 334-35, 103 S. Ct. 2378, 2386-87 (1983). According to WRI, the District Court's rulings in this case "suggest that the laws at issue do not recognize the Crow Tribe as a legitimate local taxing authority and part of the fabric of Montana state and local governments." We do not agree.

¶19 Applying § 15-35-102(11), MCA, to disallow a *state* tax deduction does not undermine the Tribe's sovereign authority to tax or govern itself. The Legislature has simply chosen to limit the class of governments to which payment of taxes constitutes a deductible expense for coal producers. By so doing, the Legislature did not implicate tribal sovereignty. Moreover, as the Department notes, WRI lacks standing to raise a claim implicating the Tribe's sovereignty. *See Northern Border Pipeline Co. v. State*, 237 Mont. 117, 128-29, 772 P.2d 829, 835-36 (1989) (Taxpayer corporation had standing to challenge a state property tax, but did "not have standing to assert the Tribes' sovereign right of self-government in doing so."). The District Court did not err in so concluding.

¶20 Affirmed.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON

10