DA 15-0732

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 283

STATE OF MONTANA, DEPARTMENT OF REVENUE,

        Petitioner and Appellee,

   v.

ALPINE AVIATION, INC.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 14-286
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Max A. Hansen, Max A. Hansen & Associates, P.C., Dillon, Montana

       For Appellee:

          Brendan R. Beatty, Courtney Mathieson, Elizabeth M. Roberts, Special
Assistant Attorneys General, Helena, Montana

Submitted on Briefs: September 14, 2016

Decided: November 9, 2016

Filed:

_____

Clerk

FILED

11/09/2016

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0732

Justice Jim Rice delivered the Opinion of the Court.

¶1    Alpine Aviation, Inc. (Alpine) appeals the interlocutory adjudication of the First Judicial District Court, Lewis and Clark County, interpreting the phrase "regularly scheduled flights" within § 15-23-401(1), MCA. We affirm in part and reverse in part.

¶2    We consider the following issue on appeal:

*Did the District Court correctly interpret the phrase "regularly scheduled flights" in § 15-23-401(1), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On May 31, 2013, the Montana Department of Revenue (DOR) informed Alpine it would be centrally assessed pursuant to §§ 15-23-101 and 15-6-145, MCA.  Alpine filed a request for reclassification, which was denied by the DOR.

¶4    DOR and Alpine both waived proceedings before the DOR Office of Dispute Resolution, and Alpine filed an appeal with the State Tax Appeal Board (STAB).  After the initial STAB pleadings were filed, DOR brought an interlocutory appeal to the District Court pursuant to § 15-2-304, MCA, seeking an "adjudication of the meaning of 'scheduled airline' and 'scheduled air commerce' for Montana property tax purposes." These terms are further informed by the statutory phrase "regularly scheduled flights," the meaning of which was fully briefed by both parties.

¶5    On May 14, 2015, the District Court issued an order for interlocutory adjudication, holding that "scheduled airline company" under the statute means "any person who undertakes directly or indirectly to engage in the business of transportation by aircraft of persons or property for hire in interstate, intrastate, or international transportation on

2

regularly scheduled flights," and that, in turn, "regularly scheduled flights" are "those which follow a patterned but not necessarily uniform interval according to timetables and locations predefined by the carrier and which fly regardless of whether there are passengers or freight to be carried." Alpine appeals.

## STANDARD OF REVIEW

¶6      We review issues of statutory interpretation for correctness. *Westmoreland Res. Inc. v. Dep't of Revenue*, 2014 MT 212, ¶ 5, 376 Mont. 180, 330 P.3d 1188.

## DISCUSSION

¶7      This matter comes before us pursuant to statutes uniquely authorizing interlocutory adjudications and appeals from those adjudications. Section 15-2-305, MCA, provides:

> **Jurisdiction to make interlocutory adjudication.** A district court may make an interlocutory adjudication of an issue pending before the state tax appeal board if that issue involves procedure, the admissibility of evidence, or a substantive question of law and does not require the determination of a question of fact. If the petition is granted, the district court shall rule on all issues presented in the petition and the response, regardless of whether a ruling on less than all of the issues is dispositive of the case. Appeals from the ruling of the court may be appealed as in other civil actions.[1]

¶8      DOR is required to "centrally assess each year . . . all property of scheduled airlines." Section 15-23-101(3), MCA. A "scheduled airline company" is defined as "any person who undertakes directly or indirectly to engage in the business of scheduled

---

[1] Article VII, Section 4 of the Montana Constitution is entitled "District court jurisdiction." It provides, in part, that "The legislature may provide for direct review by the district court of decisions of administrative agencies." Mont. Const. art. VII, § 4(2).

air commerce." Section 15-23-401(8), MCA. In turn, "air commerce" is defined as "the transportation by aircraft of persons or property for hire in interstate, intrastate, or international transportation on *regularly scheduled flights*." Section 15-23-401(1), MCA (emphasis added). "Regularly scheduled flights" is not separately defined in the Code, and thus, the purpose of this litigation is to provide a definition of the term, so that the corresponding statutory sections governing "scheduled airlines" can be properly applied.

¶9     To accomplish this task, Alpine encourages the Court to examine the lengthy legislative history of aviation-related state statutes, and also argues that "scheduled" has a unique meaning in federal aviation regulatory law that should be considered. Alpine requests that we reverse and remand this matter with instructions to the District Court "to issue an interlocutory adjudicatory ruling that Alpine is not a scheduled airline." The DOR responds that the plain meaning of the statutes should control and that "Alpine impermissibly attempts to bring questions of fact into this interlocutory adjudication." It asks that we affirm the District Court's interpretation of the statute.

¶10     We agree with DOR's general approach to this matter. As noted above, this is an interlocutory appeal that does not permit determination of questions of fact. Section 15-2-305, MCA. There is no factual record before us and we cannot here determine Alpine's status as a scheduled airline company or its ultimate status as a centrally assessed company. The only issue properly before us is the legal question of the statute's interpretation, and we begin with its plain wording.

¶11    "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.  "In the construction of a statute, the intention of the legislature is to be pursued, if possible."  Section 1-2-102, MCA.  "[L]egislative intent is to be ascertained, in the first instance, from the plain meaning of the words used" by the legislature.  *W. Energy Co. v. Dep't of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, 990 P.2d 767.  Similarly, "[w]hen the legislature has not defined a statutory term, we consider the term to have its plain and ordinary meaning." *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666; *accord Bates v. Neva*, 2014 MT 336, ¶ 15, 377 Mont. 350, 339 P.3d 1265.

¶12    As such, statutory interpretation begins with an examination of the plain language of the statute itself, *Smith v. Burlington N. & Santa Fe Ry.*, 2008 MT 225, ¶ 22, 344 Mont. 278, 187 P.3d 639, and dictionary definitions may be considered, *Mont. Dep't of Revenue v. Priceline.com, Inc.*, 2015 MT 241, ¶ 10, 380 Mont. 352, 354 P.3d 631; *Giacomelli*, ¶ 18; *AP v. Mont. Senate Republican Caucus*, 286 Mont. 172, 179, 951 P.2d 65, 69 (1997); *In re Irvine's Estate*, 114 Mont. 577, 580, 139 P.2d 489, 489–90 (1943).

¶13    Dictionary definitions of the operative words "regularly" and "scheduled" produce common sense renderings.  "Regular" means "steady or uniform in course, practice, or occurrence," "not subject to unexplained or irrational variation," "returning, recurring, or received at stated, fixed, or uniform intervals."  *Webster's Third New International Dictionary* 1913 (Philip Babcock Gove ed., 16th ed. 1971) [hereinafter *Webster's Third*].

5

Similarly, "regularly" means "in a regular, orderly, lawful, or methodical way." *Webster's Third*, *supra*, 1913. "Schedule" is "a written or printed formal list," "a transportation timetable," or a "written plan or proposal for future procedure typically indicating the objective proposed, the time and sequence of each operation, and the materials required." *Webster's Third*, *supra*, 2028.

¶14 These terms, combined with the statute as a whole, demonstrate that a "regularly scheduled flight" occurs on a uniform or unvarying, and reoccurring, basis as preset by an airline and offered for hire to the public. *See* § 15-23-401(1), MCA (defining "air commerce" as offering air transportation "for hire"); § 15-23-401(8), MCA (defining "scheduled airline company" as engaging in "the business" of air commerce). One key concept here is *who* sets the flight schedule. An airline arranges a regularly scheduled flight; the customer does not.

¶15 The District Court's definition of "regularly scheduled flight" was satisfactory with the exception of its use of the phrase "patterned but not necessarily uniform," which potentially incorporates a notion of irregularly arranged flights that would be inconsistent with the Legislature's "regularly scheduled" wording, because a pattern can be an irregular one. *See, e.g.*, *Trinity Am. Corp. v. EPA*, 150 F.3d 389, 393 (4th Cir. 1998) (contaminated groundwater testing produced "an 'irregular pattern' of both low and high levels of contaminants at different times"); *B B & L, Inc. v. NLRB*, 52 F.3d 366, 370 (D.C. Cir. 1995) (employees working an "irregular pattern" of hours nonetheless had a "reasonable expectancy of further employment"); *Maker's Mark Distillery, Inc. v.*

6

*Diageo N. Am.*, 679 F.3d 410, 417 (6th Cir. 2012) (trademark registered for the "irregular pattern" of the wax-like trade dress sealing bottles of Maker's Mark bourbon); *Thornton v. U.S. Dep't of Agric.*, 715 F.2d 1508, 1510 (11th Cir. 1983) ("irregular patterns" of heat emissions from horse's forelegs suggested inflammation characteristic of soring). Thus, making the small revision of removing this phrase, we affirm the remainder of the District Court's definition of "regularly scheduled flights" as "those which follow an interval according to timetables and locations predefined by the carrier and which fly regardless of whether there are passengers or freight to be carried."[2]

¶16    Affirmed in part and reversed in part.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON

---

[2] Although not binding on this Court, this interpretation is consistent with the common usage of the phrase "regularly scheduled flight" in various legal contexts. *See, e.g.*, *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 626, 93 S. Ct. 1854, 1856 (1973) ("The only *regularly scheduled flight* affected by the ordinance was an intrastate flight of Pacific Southwest Airlines originating in Oakland, California, and departing from Hollywood-Burbank Airport for San Diego every Sunday night at 11:30." (emphasis added)); *Air Line Pilots Ass'n Int'l v. Fed. Aviation Admin.*, 454 F.2d 1052, 1053 (D.C. Cir. 1971) ("Two Mohawk pilots, on separate occasions, were disciplined (by 15-day suspensions) for refusing to fly a *regularly scheduled flight*." (emphasis added)); *Koirala v. Thai Airways Int'l*, 126 F.3d 1205, 1207 (9th Cir. 1997) ("Flight TG-311 was a *regularly scheduled flight* from Bangkok, Thailand to Kathmandu, Nepal." (emphasis added)).