No. 02-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 36

RANDY ARMBRUST and RAYMOND MONK,

        Plaintiffs and Respondents,

  v.

DAN L. YORK and DEBORAH L. YORK,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-00-301,
Honorable Jeffrey H. Langton, Presiding

COUNSEL OF RECORD:

        For Appellants:

                J. Tiffin Hall, Milodragovich, Dale, Steinbrenner & Binney, P.C.,
Missoula, Montana

        For Respondents:

                Jeffrey B. Hays, Hays & Hayes, P.L.L.P., Hamilton, Montana

                        Submitted on Briefs:  October 10, 2002

                                Decided:  March 4, 2003

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Appellants, Dan and Deborah York, appeal from the judgment of the Twenty-First Judicial District Court, Ravalli County, requiring them to remove a newly constructed garage from their property. We affirm.

¶2    The following issue is raised on appeal:

¶3    Whether the District Court erred in determining that the Yorks' construction of a second garage on their property violated the one-garage restriction to which the property was subject.

## PROCEDURAL BACKGROUND

¶4    Raymond Monk, Randy Armbrust, and the Yorks own real property in the Home Acres Orchards subdivision near Stevensville, Montana. Their properties are subject to the same restrictive covenants, recorded on August 13, 1971. A family dwelling and garage existed on the Yorks' lot when they purchased the property in 1997.

¶5    Prior to constructing the building in dispute, the Yorks reviewed the subdivision's restrictive covenants and discovered a 100-foot setback restriction and a limitation of one garage per property owner. The setback restriction provided that "[n]o buildings (including any roof overhang) shall be located nearer than one hundred (100) feet to the outside perimeter line of the owner's track, except as approved by the Architectural Committee." The one-garage restriction provided that "[s]aid lot or lots may be improved by the erection of a one (1) family dwelling, garage, guest house, or any other building necessary for the family pets or animals . . . ."

2

¶6     In the summer of 2000, the Yorks began construction on a second garage next to their home. They sought approval from the architectural committee identified in the restrictive covenants but discovered that the committee no longer existed. Nonetheless, the Yorks proceeded with the project. The Yorks failed to inform Armbrust and Monk about the project, and since neither Armbrust nor Monk reside on their property year-round, they only first discovered the Yorks' building in October 2000. Because the building was located approximately 61 feet from the northeast corner of the Yorks' lot and 55 feet from the northwest corner, Armbrust and Monk notified the Yorks by letter that the building was in violation of the setback restriction, and requested that the Yorks stop working on the building.

¶7     Armbrust and Monk then filed suit to enforce the restrictive covenant and enjoin construction. Since neither Armbrust nor Monk knew that the building would be a garage, their Complaint made no mention of the one-garage restriction. They sought only to enforce the setback restriction and to relocate the building. However, during trial, Dan York testified that the building was, in fact, a garage separate and apart from his house, and admitted that this second garage would violate the one-garage restriction.

¶8     The District Court issued its findings of fact and conclusions of law, and entered judgment in favor of Monk and Armbrust. The court determined that the building violated both the setback and one-garage restrictions, and ordered the Yorks to remove the garage from their lot within 90 days. The Yorks appealed from that portion of the court's decision requiring them to remove the garage. In addition, Monk and Armbrust filed a motion to

3

amend their Complaint to conform to the evidence at trial pursuant to Rule 15(b), M.R.Civ.P. The new evidence, according to Monk and Armbrust, included Dan York's admission that the second garage violated the one-garage restriction. Although the District Court has not ruled on the motion, it appears that the court's judgment was based on this evidence.

## DISCUSSION

¶9     The pivotal question raised by this appeal is whether the issue of the one-garage restriction was tried by the implied consent of the Yorks. In its conclusions of law, the District Court determined that the building constructed by the Yorks was, in fact, a second garage, and that the Yorks had, accordingly, violated the one-garage restriction. To effect compliance with the restrictive covenant, the court ordered the Yorks to remove the garage from their lot.

¶10     On appeal, the Yorks argue that the District Court's conclusions amount to an abuse of discretion, and specifically, that the court improperly based its judgment on a legal theory not presented in the Complaint filed by Monk and Armbrust. As the Yorks observe, Monk and Armbrust requested only that the District Court order the Yorks to move their building to comply with the 100-foot setback restriction. The Yorks contend that the issue of the one-garage restriction was not tried by the express or implied consent of the parties since it was never raised in the pleadings and because they subsequently objected to the introduction of any evidence regarding that issue. The Yorks conclude that the District Court should have confined its judgment to the issues raised in the Complaint, and that the court erred when it

4

determined that the Yorks' building constituted a second garage in violation of the one-garage restriction.

¶11 In response, Monk and Armbrust argue that the issue of the one-garage restriction was tried by the implied consent of the Yorks by virtue of the fact that, on direct examination, Dan York testified that the building was intended as a garage, and that it is separate from his house. Monk and Armbrust also contend that they were unaware of the purpose of the Yorks' building prior to filing their Complaint and that, pursuant to Rule 15(b), M.R.Civ.P., they properly sought to amend the Complaint to conform to this new evidence.

¶12 Our standard of review of a trial court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. *See also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer Inc. v. Dep't of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

¶13 Under Rule 15(b), M.R.Civ.P., "issues not raised by the pleadings may be tried by the express or implied consent of the parties. If this occurs, then the pleadings can be amended to conform to the issues actually litigated." *Glacier Nat'l Bank v. Challinor* (1992), 253 Mont. 412, 416, 833 P.2d 1046, 1049. Furthermore, "it is within the discretion of the trial court whether to allow such amendments . . . ." *Challinor*, 253 Mont. at 416, 833 P.2d at 1049.

¶14 The record supports the District Court's decision to consider the one-garage restriction as an issue consented to by the Yorks. During direct examination, Dan York

5

testified that the building under construction on his lot was, in fact, a garage. The following excerpts from the trial transcript of statements made by Dan York to his attorney during direct examination, are illustrative:

Q. When you purchased the property, was there already a house located on that lot No. 2?

A. Yes, there was a house on lot No. 2.

Q. And at some point—Or let me rephrase that. When did you decide that you wanted to build a garage then next to that house?

A. We, as a family, had decided that we were going to build a garage on our property in August [of 2000].

¶15 York's acknowledgment was sufficient to open the door to further inquiry by Monk and Armbrust as to whether the building was a second garage and whether the Yorks had violated the one-garage restriction. During cross-examination on these points, York admitted that he was aware of and had reviewed the restrictive covenants before beginning construction on the garage and that he knew the covenants permitted only one garage per lot. These statements served as a basis for the District Court's findings and conclusions that the Yorks' garage violated the one-garage restriction and that compliance with the covenant required removal of the building.

¶16 Despite this, the Yorks assert that because they objected to the introduction of this testimony during cross-examination, they cannot be deemed to have consented to the litigation of the second garage issue. Granted, in past decisions, we have stated that implied consent may be found when issues extrinsic to the pleadings are admitted at trial *without objection*. *See Ryan v. City of Bozeman* (1996), 279 Mont. 507, 513, 928 P.2d 228, 232;

6

*Columbia Grain Int. v. Cereck* (1993), 258 Mont. 414, 421, 852 P.2d 676, 680. However, those decisions do not suggest that by objecting to the admission of evidence, the party opposing the introduction of an issue can always avoid a determination by the court that he or she impliedly consented to the litigation of the issue. Whereas the failure to object may serve as an implied consent to the litigation of new issues, the existence of an objection will not necessarily preclude a finding of implied consent. Thus, when applying the implied consent rule, we consider the interplay of a variety of factors surrounding a party's consent. *See McJunkin v. Kaufman and Broad Home Sys.* (1987), 229 Mont. 432, 438, 748 P.2d 910, 914 (stating that in these decisions, "the facts attendant to each case become controlling"). For example, in *Challinor*, we concluded that the respondent bank did not expressly or impliedly consent to the litigation of a suretyship issue where "the record was *replete* with objections" raised by the bank in response to the appellant's attempts to offer evidence concerning the issue. 253 Mont. at 417, 833 P.2d at 1049 (emphasis added).

¶17    This distinction is particularly relevant in the present case, where the Yorks objected to attempts by Monk and Armbrust to explore the second garage issue, but only after first introducing the issue themselves during their own presentation of evidence, i.e. through Dan York's testimony during direct examination. In addition, Monk and Armbrust were previously unaware that the building under construction was a garage. They filed their Complaint before the building was completed, and at the time of filing, had no knowledge that the one-garage restriction was an issue.

¶18 Rule 15(b) provides that "[i]f evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended . . . [if] the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party . . . ." Rule 15(b), M.R.Civ.P. The rule also states that "[t]he court may grant a continuance to enable the objecting party to meet such evidence." Rule 15(b), M.R.Civ.P. Although the Yorks objected to the admission of evidence regarding the issue of the one-garage restriction, they declined to seek a continuance or an opportunity to meet this evidence. Neither did they argue to the District Court that the admission of Dan York's testimony resulted in prejudice to their case. Taken together, these factors support a finding of implied consent by the Yorks despite their objection to the testimony elicited by Monk and Armbrust.

¶19 In summary, we find that the Yorks' argument that the District Court improperly relied upon evidence concerning the garage issue is unpersuasive because, having raised the issue during direct examination, the Yorks impliedly consented to its subsequent litigation. Furthermore, in light of Dan York's testimony that the building was a garage separate from an existing house and garage, and that this second garage violated the one-garage restriction, we hold that the District Court correctly concluded that the restrictive covenant was violated, and that removal of the second garage was necessary in order to effect compliance with the covenant.

¶20 Finally, we consider the propriety of the motion to amend filed by Monk and Armbrust. The Yorks observe that Monk and Armbrust "never moved the [District Court],

not even at trial, to amend their pleading to try the issue of whether the Yorks were in violation of an alleged covenant prohibiting more than one garage," and imply that the absence of a Rule 15(b) motion made during trial precluded the District Court from considering the issue of the one-garage restriction.

¶21 Although Monk and Armbrust did not file their motion to amend until after the court issued its judgment, Rule 15(b) provides that a motion to amend pleadings may be made "at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues." Rule 15(b), M.R.Civ.P. Applying Rule 15(b), this Court has stated that a complaint may be amended even after an appeal. *See Reilly v. Maw* (1965), 146 Mont. 145, 155-56, 405 P.2d 440, 446-47. Accordingly, we reject the Yorks' argument that Monk and Armbrust's motion to amend was untimely.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON

9

Justice Jim Regnier dissenting.

¶22    I respectfully dissent.

¶23    In their complaint Armbrust and Monk sought to enforce the setback restriction but not the one-garage restriction. The Court points out that neither Armbrust nor Monk knew that the building being constructed was a garage and, therefore, their complaint made no mention of the one-garage restriction. Assuming that the setback restriction was the only issue being litigated, York responded to a question that the new construction was a "garage." As a result of this spontaneous response, the District Court and this Court concluded that the Yorks impliedly consented to litigate the one-garage restriction. The District Court then permitted Monk and Armbrust to amend their complaint pursuant to Rule 15(b), M.R.Civ.P., after judgment was entered by the District Court.

¶24    Armbrust and Monk admit they knew a building was being constructed at the time they filed their complaint, but since they did not know what the building was going to be used for, they only alleged a violation of the setback restriction in their complaint. The parties were clearly not prepared to litigate the one-garage restriction at trial and consequently we are presented with an incomplete and somewhat sketchy record on the issue. For example, we don't know if the Yorks intended to convert the attached garage to another use after the new structure was built. Also, Dan York suggested that the new improvement may be used as a wood shop and not as a garage in the traditional sense. None of this relevant and important information was developed at the District Court. This is not surprising since the one-garage restriction was not an issue that either party intended to litigate at the time of trial. In fact, the District Court made no findings on the question of whether the Yorks'

10

structure constituted a "garage" for purposes of the covenant that purports to restrict only one garage per lot in the Home Acres Orchards Subdivision.

¶25     Simply because the Yorks or their attorney may have used the term "garage" when responding to a question concerning the building does not establish conclusively that the structure constitutes a second garage as defined and contemplated by the restrictive covenants.  I would remand this matter back to the District Court for a new trial on this issue. I believe the Yorks should have an opportunity to present evidence as to whether or not the building constitutes a second garage as envisioned by the covenants.

/S/ JIM REGNIER

Justices Patricia O. Cotter and Jim Rice join in the foregoing dissent.

/S/ PATRICIA COTTER
/S/ JIM RICE

11