FILED

March 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0619

DA 15-0619

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 52

IN RE THE MARRIAGE OF:

JENNIFER M. DAVIS n/k/a JENNIFER MISSEL,

        Petitioner and Appellee,

  v.

KENNETH R. DAVIS,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                     In and For the County of Cascade, Cause No. BDR 11-936
                     Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Robert L. Sterup, Holland & Hart LLP; Billings, Montana

        For Appellee:

                Marcia G. Birkenbuel, Attorney at Law; Great Falls, Montana

                             Submitted on Briefs:  February 17, 2016

                                      Decided:  March 8, 2016

Filed:

                                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Kenneth Russell Davis, (hereinafter "Russell"), appeals from an order from the Eighth Judicial District Court, Cascade County, which affirmed the Standing Master's Findings of Fact, Conclusions of Law and Order Amending Parenting Plan. The Amended Final Parenting Plan awarded primary custody of H.D., the parties' child, to Appellee Jennifer Missel (hereinafter "Jennifer"), during the school year. We affirm and address the following issue on appeal:

*Did the District Court err by affirming the Standing Master's Order Amending the Parenting Plan?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Jennifer and Russell are the parents of H.D., who is five years old. Jennifer lives in Jackson, Wyoming, and Russell lives in Great Falls, Montana. The couple dissolved their marriage in 2012 (H.D. was two years old at the time), and when issuing the decree of dissolution, the District Court approved a stipulated parenting plan that the parties had entered. This stipulated plan provided that H.D. would split her time equally between the parties, spending two weeks at a time with each parent in their respective homes in different states. Both Jennifer and Russell contemplated enrolling H.D. in kindergarten in the fall of 2015, at which time it became apparent the stipulated plan would need to be revised. Russell filed a Motion to Modify the Parenting Plan in November 2014, and Jennifer responded with her own proposed parenting plan. The District Court's Standing Master held a hearing in July 2015, and issued Findings of Fact, Conclusions of Law and Order Amending Parenting Plan on August 7 that placed H.D. with Jennifer during the

2

school year. The Standing Master found that both parents held a "very close and loving" relationship with H.D., and that "H.D. is well adjusted to both her communities and families" located in Jackson and in Great Falls. However, the Standing Master also found that "[d]uring Russ[ell]'s parenting time Jennifer has difficulty contacting H.D. Russ[ell] frequently does not answer the phone and Jennifer does not have uninterrupted Skype visits." In addition, the Standing Master found that "[i]t is difficult for Jennifer to communicate with Russ[ell] regarding H.D. because Russ[ell] has blocked Jennifer's phone number on his phone," that "Russ[ell] has negative views of Jennifer and her home," and that "Russ[ell] does not always discuss parenting issues with Jennifer. For example, the parties each take H.D. to the Baptist church in their area. Recently Russ[ell] has been taking H.D. to the Latter Day Saints church without discussing this with Jennifer."

¶3      Russell filed objections to the Standing Master's Order with the District Court, and the District Court affirmed the Order on September 29, 2015. Russell appeals.

## STANDARD OF REVIEW

¶4      "Two standards of review are relevant in cases involving both a standing master and the district court: the standard the district court applies to the master's report and the standard we apply to the district court's decision." *In re Marriage of Kostelnik*, 2015 MT 283, ¶ 15, 381 Mont. 182, 357 P.3d 912 (citing *In re G.J.A.*, 2014 MT 215, ¶ 11, 376 Mont. 212, 331 P.3d 835). We review a district court's decision *de novo* to determine whether it applied the correct standard of review to a standing master's findings of fact

3

and conclusions of law. *See G.J.A.*, ¶ 11. "A district court reviews a standing master's findings of fact for clear error, and its conclusions of law to determine if they are correct." *Kostelnik*, ¶ 15 (citations omitted).

**DISCUSSION**

¶5 *Did the District Court err by affirming the Standing Master's Order Amending the Parenting Plan?*

¶6 Russell argues it was error for the Standing Master and the District Court to weigh his religious choice as a factor in determining child custody without a thorough evaluation of the effects of that religious choice on the child. Russell urges adoption by this Court of "an enhanced standard" that would "protect religious liberty while ensuring child custody decisions are made in the best interest of the child." Russell offers that the new rule should require that "[b]efore placing any weight on custodial parent's exercise of religious choice, . . . the Court must expressly determine, on competent evidence, whether that religious choice impairs the child's emotional development. Absent that evaluation, religious choice should not be considered, whether directly or indirectly."

¶7 Presented with the motion to amend the parenting plan, the Standing Master had to determine with which parent to place H.D. for the quickly-approaching school year. Both parents testified before the Standing Master. Jennifer testified that when H.D. was in Russell's care for his two-week periods, she would have trouble communicating with H.D. through Skype or the phone. Jennifer further testified that she and Russell communicated exclusively through email, as Russell had blocked her number on his phone. In his testimony, Russell dismissed the breakdowns in communication during his

4

parenting time as occurring because "we get busy," but stated that the breakdowns were not happening purposefully. He admitted that he had not been participating recently in transporting H.D. to the mutually agreed exchange location, half-way between the parties' Wyoming and Montana homes, electing instead to have his parents take H.D. to the location in order to avoid contact with Jennifer. When asked if he had spoken to Jennifer about the decision to take H.D. to a different church in Great Falls, Russell acknowledged he had not consulted her.

¶8 In making her determination, the Standing Master entered detailed findings regarding the mandatory best interest factors set forth in § 40-4-212(1)(a)-(m), MCA. The Master found that both Jennifer and Russell "are fit and appropriate parents who provide a nurturing, secure and loving home for H.D." She further determined, under § 40-4-212(1)(l), MCA, that "Russ[ell] has very negative views of Jennifer and her home, including long standing concerns that Jennifer is attempting to harm him. Russ[ell] does not communicate with Jennifer about important parenting issues and is not responsive to Jennifer's efforts to stay in touch with H.D. during Russ[ell]'s parenting time." The Master ultimately concluded that Jennifer's proposed parenting plan was in H.D.'s best interest, and entered an Amended Final Parenting Plan accordingly.

¶9 The Standing Master's concerns about the difficulties in communication between Russell and Jennifer were properly drawn from the evidence presented at the hearing. The Master's reference to Russell unilaterally taking H.D. to a particular church during his parenting time was not a criticism of Russell's religious preference, but rather an

5

example of the real problem—Russell's deficits in cooperatively co-parenting with Jennifer. The District Court also recognized this, and after articulating the correct standard of review, affirmed the Standing Master's Order and Amended Final Parenting Plan. *See G.J.A.*, ¶ 11.

¶10 Upon an independent review of the record, we find no error in the District Court's affirmance of the Standing Master's Order. Because this case is resolved within the confines of the applicable standard of review, we decline to adopt a new constitutional standard in regard to consideration of religious factors in child custody determinations. Russell's religious preference itself was not a factor in the Standing Master's decision, and "as a matter of longstanding principle, courts avoid constitutional issues whenever possible." *State v. Kolb,* 2009 MT 9, ¶ 13, 349 Mont. 10, 200 P.3d 504.

¶11 Affirmed.


/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA