FILED

05/12/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0225

DA 19-0225

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 119

IN RE THE PARENTING OF D.C.N.H.,

A minor child.

AVALON DAWN GRAY,
f/k/a AVALON DAWN DOUGLAS,

Petitioner and Appellee,

and

BAILEY JOSEPH HANSON,

Respondent and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and For the County of Glacier, Cause No. DR-13-26
                Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Marybeth M. Sampsel, Measure Law, P.C., Kalispell, Montana

                David F. Stufft, Attorney at Law, Kalispell, Montana

        For Appellee:

                Avalon Dawn Gray, Self-Represented, Cut Bank, Montana

                                        Submitted on Briefs:   March 26, 2020

                                                Decided:   May 12, 2020

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Bailey Joseph Hanson appeals the Ninth Judicial District Court's order adopting in full a Standing Master's Findings of Fact, Conclusions of Law and Order Amending the Parenting Plan to direct a fifty-fifty division of parenting time with Avalon Dawn Gray for the parties' seven-year-old child.  We restate the issues on appeal:

1. *Did the District Court err by making findings of fact that were not supported by the evidence presented and by failing to make findings of fact that were sufficiently comprehensive?*

2. *Did the District Court err by ordering a parenting plan that was arbitrary and exceeded the bounds of reason given the evidence presented?*

3. *Did the District Court err by impermissibly expanding the Standing Master's judicial authority?*

4. *Did the District Court err by making an untimely referral to the Standing Master?*

We find no abuse of discretion by the District Court and no clear error in the Standing Master's findings.  We decline to address Issues 3 and 4 because Bailey failed to preserve those arguments.  Accordingly, we affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

¶2     D.C.N.H. was born in September 2012.  On Avalon's petition, the District Court adopted a permanent parenting plan in September 2014, granting Avalon primary residential custody and Bailey approximately eight days of parenting time per month.  Bailey appealed, and we affirmed.  *See Douglas v. Hanson (In re D.C.N.H.)*, No. DA 14-0624, 2016 MT 24N, 2016 Mont. LEXIS 24.

¶3     In December 2017, Bailey filed a motion to amend the parenting plan.  He claimed that Avalon was engaging in parental alienation and other behaviors not in D.C.N.H.'s best interests.  Bailey asked the District Court to grant him primary custody, with limited supervised visitation for Avalon.  On May 31, 2018, the District Court issued an order setting a mid-July hearing on the motion to amend.  On June 28, the court issued an order referring the matter to the District Standing Master.  Standing Master Mark Westveer conducted a two-day non-jury trial on July 16 and 17.  Bailey was represented by counsel.  Avalon represented herself.

¶4     The Standing Master heard testimony from multiple witnesses—most called by Bailey—including Jerri Swenson, D.C.N.H.'s licensed clinical professional counselor; Dr. Michael Bütz, a clinical psychologist with expertise in Parental Alienation Syndrome ("PAS"); Bailey; Avalon; and other family members.  The court also entered numerous exhibits into evidence—again, most offered by Bailey—including affidavits from Swenson and family members; scientific articles on PAS; a report by Dr. Sara Boilen, Psy.D, summarizing her psycho-social-emotional evaluation of D.C.N.H.; voluminous text message records between Avalon and Bailey; medical and school records; and video and photographic evidence.  Bailey sought to establish that Avalon was engaging in behavior inconsistent with D.C.N.H.'s best interests, such as showing him horror movies and alienating him from Bailey, and urged the court to reduce her parenting time to one hour of supervised visitation per week.

¶5 On September 28, Standing Master Westveer entered findings of fact, conclusions of law, and a recommended order amending the parenting plan. Based on the evidence presented, the Standing Master found that D.C.N.H. struggles in school and is socially immature and physically aggressive and that Avalon and Bailey "are in high conflict with regard to the parenting of their child and each other." He noted that although Avalon's "conduct is consistent with the early stages of alienation[,]" the alienation was "mild" and that excluding Avalon from "[p]arenting D.H. except in a supervised setting is not appropriate." The Standing Master concluded that amending the parenting plan was necessary and ordered Bailey and Avalon to "parent D.H. on a week on week off basis."

¶6 Bailey filed numerous objections. At his request, the District Court scheduled a hearing to review the Standing Master's findings. On March 19, 2019, the court issued its Order Affirming Findings of Fact, Conclusions of Law, and Order Amending Parenting Plan. Bailey appeals.

## STANDARDS OF REVIEW

¶7 In a case involving both a standing master and the district court, we review a district court's decision de novo to determine whether it applied the correct standard of review to a standing master's findings of fact and conclusions of law. *In re the Marriage of Davis*, 2016 MT 52, ¶ 4, 382 Mont. 378, 367 P.3d 400. A district court reviews a standing master's findings of fact for clear error and his conclusions of law for correctness. *Davis*, ¶ 4 (citation omitted). "In a case tried before a standing master, we apply the same standard of review to an adopted master's findings as we do to a district court's."

4

*Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715 (citing *Patton v. Patton*, 2015 MT 7, ¶ 17, 378 Mont. 22, 340 P.3d 1242). This Court reviews for clear error the underlying findings in support of a district court's decision regarding modification of a parenting plan. *In re G.M.N.*, ¶ 10 (citation omitted). We review conclusions of law for correctness. *In re G.M.N.*, ¶ 10.

¶8 "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision." *In re G.M.N.*, ¶ 11 (citation omitted). This Court does not reweigh conflicting evidence or substitute its judgment for that of the district court; rather, we evaluate findings of fact to determine "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." *In re G.M.N.*, ¶ 11 (citations omitted). Absent clear error, we review a district court's decision regarding a parenting plan for an abuse of discretion. *In re G.M.N.*, ¶ 11.

## DISCUSSION

¶9 *1. Did the District Court err by making findings of fact that were not supported by the evidence presented and by failing to make findings of fact that were sufficiently comprehensive?*

¶10 Bailey challenges the findings of fact made by the Standing Master and affirmed by the District Court. He argues that Findings 24, 28, and 38 are unsupported by or "categorically contradict" the evidence presented and that the "remaining findings were not sufficiently comprehensive, as required by caselaw."

¶11   Bailey specifically challenges the Standing Master's finding that one of his expert witnesses, Jerri Swenson, did not have expertise regarding PAS. Finding 28 provides:

> Ms. Jerri Swenson testified. She is a family counselor from Whitefish Montana who has a Masters' Degree in counseling [and] has been counseling D.H. since early December 2017. . . . There are 7 office notes introduced as exhibits. [Swenson] had met with the child 12 times prior to the hearing. There are no notes for 5 counseling sessions in the Court file. There is no mention of PAS in her office notes. There is nothing in her notes or testimony indicating [D.H.] is unwilling to spend time with Father except for the finding in FOF #29 below. Ms. Swenson believes the PAS is severe based upon what she has learned from Father and his attorney, Dr. Boilen's report and conversations with Dr. Bütz. Ms. Swenson did not profess to have expertise regarding PAS.

¶12   Bailey argues the Standing Master's finding is unsupported by the evidence because the Standing Master qualified Ms. Swenson as an expert in family therapy and then noted from the bench that family therapy "is subsumed within the parental alienation sphere[.]" We disagree. Swenson's testimony established that she was an expert in family therapy; that she had encountered cases of PAS in her career as a family therapist; and that in her opinion, PAS was present to a severe degree in D.C.N.H. She did not profess expertise in PAS. That role was reserved for Dr. Bütz—a licensed clinical forensic and neuro-psychologist of nearly thirty years—who testified that he has studied PAS since 2008 and published multiple peer-reviewed articles on the subject. The sentence in Finding 28 with which Bailey takes issue is just one portion of the finding. The Standing Master did not ignore Swenson's opinion; he found separately that Avalon had exhibited poor parental judgment, including showing D.C.N.H. horror movies unsuited to a child of his age, and stated that her conduct was "consistent with the early stages of alienation." But after weighing Swenson's opinion against the conflicting evidence, the Standing Master

6

"did not find sufficient evidence in the record to determine PAS present in a severe degree." He considered Dr. Bütz's testimony that "the literature surrounding PAS is confusing and there is a considerable diversity of opinion on the subject of PAS" and observed that "many writers on the subject of PAS regard PAS as unscientific and invalid as a diagnosis." A standing master has broad discretion when considering the parenting of a child, and we presume he carefully considered the conflicting evidence. *In re G.M.N.*, ¶ 26. It is not our function to reweigh conflicting evidence or substitute our judgment for that of the standing master. *In re G.M.N.*, ¶ 11. Finding 28 is supported by substantial credible evidence and is not clearly erroneous.

¶13    We conclude likewise that Findings 24 and 38 are not clearly erroneous. With respect to Finding 24, Bailey takes issue with the Standing Master's statement that Bailey disseminated information that Avalon had contracted a sexually transmitted disease. Bailey points out that no one testified to this fact at the hearing. But the text messages the Standing Master admitted into evidence at Bailey's request included this information. Finding 24 further discusses Bailey and Avalon's hostile relationship in general, listing several of their attempts to humiliate each other. We thus disagree that the record lacks support for Finding 24.

¶14    In Finding 38, the Standing Master found that Dr. Bütz refused to offer an opinion whether PAS exists in this case. Based on Bütz's testimony, the Standing Master found it "mandatory" that an evaluator at a minimum include both parents and the child in an evaluation; but the evaluators in this case—Jerri Swenson and Dr. Boilen—had only

7

evaluated D.C.N.H. and Bailey, not Avalon. The Standing Master characterized this as a "manipulation of the facts and circumstances by counsel for Father not in the best interest of the child." Bailey notes, again correctly, that Dr. Bütz never used the word "mandatory" in his testimony. He did testify, however, that Swenson's failure to interview Avalon was a shortcoming and that he would have ordered a "full parental capacity evaluation conducted by a licensed forensic psychologist familiar with these kinds of cases." In other words, according to Dr. Bütz, including Avalon in the parental evaluation was important. The Standing Master's characterization does not contradict or undermine the rest of his finding that the Swenson and Boilen evaluations were incomplete. When put in their proper context and taken as a whole, the challenged findings find substantial support in the evidence. We hold that the Standing Master appropriately considered the conflicting evidence and based each of these challenged findings on the evidence presented.

¶15 We also disagree with Bailey's sweeping assertion that the Standing Master's "remaining findings are not sufficiently comprehensive." Findings must be complete enough that this Court need not speculate when assessing the conscientiousness or reasonableness of the district court's judgment. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 33, 337 Mont. 386, 162 P.3d 72 (citation omitted). Section 40-4-212(1), MCA, sets forth a non-exhaustive list of factors that a court must consider in determining what parenting arrangement is in the best interests of the child. *Tubaugh v. Jackson (In re C.J.)*, 2016 MT 93, ¶ 14, 383 Mont. 197, 369 P.3d 1028. As relevant here, the factors include: the wishes of the parents; the wishes of the child; the interaction and interrelationship of

8

the child with the parent(s) and siblings; the child's adjustment to home, school, and community; the mental and physical health of the parties; continuity and stability of care; and whether the child has frequent and continuing contact with both parents. Section 40-4-212(1), MCA. Although encouraged, the court need not make specific findings on each listed factor. *In re C.J.*, ¶ 14. Rather, at minimum, the court must make findings sufficient for this Court to determine whether the trial court considered the statutory facts and made its ruling based on the child's best interests. *In re C.J.*, ¶ 14.

¶16 Bailey cites to *In re Marriage of Converse*, 252 Mont. 67, 71-72, 826 P.2d 937, 940 (1992), in which we held the district court in error for failing to state explicitly the essential and determining facts forming the basis for its custody decision, as required by § 40-4-212, MCA. We explained that "[t]he findings of the District Court simply indicated that the custody decision was in the best interest of the children without elaborating further." *In re Marriage of Converse*, 252 Mont. at 71, 826 P.2d at 940. We reject Bailey's comparison to *Marriage of Converse*. Here, the Standing Master entered forty-two findings of fact. These findings reflect the basis for the custody decision under § 40-4-212, MCA. For example, the Standing Master found that a fifty-fifty split in custody would allow D.C.N.H. to spend more time with his half-sister, Bailey's daughter, which speaks directly to § 40-4-212(1)(c), MCA. The Standing Master also found that D.C.N.H. struggles in school and was diagnosed with adjustment disorder, which addresses the considerations of § 40-4-212(1)(d), MCA. And the Standing Master expressly

9

referenced § 40-4-212(1), MCA, when providing the rationale for amending the parenting plan in his conclusions of law.

¶17 In sum, contrary to Bailey's assertions, our review of the record reveals thoughtful factual findings capturing the evidence presented and setting forth in detail the basis for the Standing Master's custody determination. Further, the District Court applied the correct standard of review to these findings. *See In re G.N.M.*, ¶ 26. We thus agree with the District Court that the Standing Master's findings of fact are not clearly erroneous.

¶18 *2. Did the District Court err by ordering a parenting plan that was arbitrary and exceeded the bounds of reason given the evidence presented?*

¶19 Bailey next argues that the District Court abused its discretion in adopting the amended parenting plan because the fifty-fifty custody arrangement runs counter to D.C.N.H.'s best interests. We already have determined that the Standing Master did not commit clear error. Absent clear error, we review for an abuse of discretion. *In re G.M.N.*, ¶ 11. A district court abuses its discretion if it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re C.J.*, ¶ 13.

¶20 The Standing Master determined—and the District Court affirmed—that D.C.N.H.'s best interests would be served by a week-on, week-off parenting schedule. As noted above, the Standing Master provided a detailed factual basis upon which to conclude that such an arrangement was warranted. Bailey asserts that the Standing Master omitted important facts from his findings, like Avalon's marital problems with her then-husband, Joel Gray. We fail to see how this proves that the amended parenting plan—which reduced

10

Avalon's parenting time—is inconsistent with D.C.N.H.'s best interests. Bailey further asserts that several of the findings militate against a fifty-fifty parenting arrangement. For example, he cites the Standing Master's finding, based in part on Avalon's own admissions, that Avalon takes prescription drugs and on one occasion falsified a sworn affidavit regarding food stamp eligibility, leading to a one-year suspension of her right to receive food stamps. According to Bailey, this supports his proposal that Avalon receive only one hour of supervised visitation per week.

¶21 In essence, Bailey disagrees with the Standing Master's interpretation of the facts rather than with the facts themselves. *See In re G.M.N.*, ¶ 26. We will not substitute Bailey's interpretation of the facts to find the Standing Master and, in turn, the District Court abused their discretion. *See In re G.M.N.*, ¶ 26. The question is not whether there was sufficient evidence to enable the lower court to reach a different conclusion, but rather whether the conclusion that it did reach is supported by substantial evidence. *See, e.g., Frank v. Frank*, 2019 MT 130, ¶ 24, 396 Mont. 123, 443 P.3d 527; *In re B.O.T.*, 2015 MT 40, ¶ 21, 378 Mont. 198, 342 P.3d 981. Nothing in the record substantiates that the Standing Master lacked conscientious judgment or in any way exceeded the bounds of reason resulting in substantial injustice when it ordered a week-on, week-off parenting schedule, or that the District Court lacked conscientious judgment or exceeded the bounds of reason in adopting that resolution.

¶22    *3. Did the District Court err by impermissibly expanding the Standing Master's judicial authority?*

¶23    Bailey contends that the District Court impermissibly broadened the Standing Master's statutory authority by failing to specify the Standing Master's duties in his Order Appointing Standing Master.  Avalon notes that Bailey never objected on this ground in the trial court and therefore failed to preserve this issue for appeal.  Bailey responds that he did not have the opportunity to object because the District Court issued its Order Appointing Standing Master *sua sponte* just two weeks prior to the bench trial.  But Bailey filed two sets of objections to the Standing Master's findings of fact, conclusions of law, and order and requested and was granted a hearing on those objections before the District Court.  He did not raise, either in those objections or by separate motion, the concerns he now presents about the order of appointment.  In light of these facts, we are unpersuaded by Bailey's argument that he was deprived of an opportunity to raise before the District Court the arguments he presents in this appeal.

¶24    Bailey requests in the alternative that we reverse for plain error.  In general, this Court does not address issues presented for the first time on appeal.  *In re C.B.*, 2019 MT 294, ¶ 14, 398 Mont. 176, 454 P.3d 1195.  This Court may, in its discretion, invoke the plain error doctrine to review unpreserved claims where the appellant demonstrates: (1) the asserted error implicates a fundamental right; and (2) failure to review the asserted error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.  *In re C.B.*, ¶ 14 (citing *In re B.J.J.*, 2019 MT 129, ¶ 27, 396 Mont. 108,

443 P.3d 488).  In *In re C.B.*, ¶ 15, we invoked plain error to review a mother's unpreserved due process objections to the district court's decision to terminate her parental rights because failing to review her claims would risk a manifest miscarriage of justice by depriving the mother of a fundamentally fair termination proceeding.  *In re C.B.*, ¶ 15.

¶25    This case is distinguishable.  Bailey's parental rights have not been terminated; to the contrary, he has been granted more parenting time as a result of the District Court proceedings.    And nothing in the record suggests that Bailey was deprived of a fundamentally fair proceeding.  He was represented by counsel, called numerous witnesses on his behalf, and presented hundreds of pages of exhibits, which the court accepted into evidence.  We thus decline to exercise plain error review of this issue and hold that it was waived.

¶26    *4. Did the District Court err by making an untimely referral to the Standing Master?*

¶27    Bailey additionally contends that the District Court made an untimely referral to the Standing Master.  He points to § 3-5-125(1), MCA, and Glacier County's 2016 Charter Order Regarding District Standing Master Establishment & Procedure, which both call for a standing master to set a time and place for a "first meeting" of the parties to be held within twenty days after the date of the order of referral.  Bailey did not raise this issue in the District Court.  For the same reasons set forth in Issue 3, we decline to exercise plain error review, and we deem this issue waived.

13

**CONCLUSION**

¶28    In sum, Bailey failed to preserve his challenges to the District Court's appointment of the Standing Master.  We find no clear error or mistake of law in the Standing Master's findings and conclusions and no abuse of discretion in the District Court's Order Affirming Findings of Fact, Conclusions of Law, and Order Amending Parenting Plan.    The District Court is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE

14