FILED

09/09/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0031

DA 25-0031

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 201

IN RE THE MARRIAGE OF:

CIARA LYNN REHBEIN,

        Petitioner, Appellant,
        and Cross-Appellee,

   and

JESSICA MICHELLE PADDOCK,

        Respondent, Appellee,
        and Cross-Appellant.

APPEAL FROM:   District Court of the Second Judicial District,
                 In and For the County of Butte-Silver Bow, Cause No. DR 2022-0050
                 Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James D. Sweet, Jr., Sweet Law, PC, Billings, Montana

      For Appellee:

          Amanda D. Hunter, Copper City Law, PLLC, Butte, Montana

Submitted on Briefs:  July 16, 2025

Decided:  September 9, 2025

Filed:

_____
                         Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Ciara Lynn Rehbein appeals from the Second Judicial District Court, Butte-Silver Bow County's December 12, 2024 Findings of Fact, Conclusions of Law, and Decree of Dissolution ("Decree"). The District Court awarded Jessica Michelle Paddock a parental interest in two minor children who were born during Rehbein and Paddock's marriage. We restate and address the following issues:[1]

> *Issue 1: Did the District Court err by amending the pleadings after trial to consider whether § 40-4-228, MCA, granted Paddock a parental interest?*

> *Issue 2: Did the District Court err by awarding Paddock a parental interest pursuant to § 40-4-228, MCA?*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Rehbein and Paddock started dating in 2011. They married for the first time in 2014, but divorced in June 2017. Later that fall, they rekindled their relationship and decided to have a child. A mutual friend agreed to be the sperm donor. Rehbein conceived A.M.R. in October 2017. Rehbein and Paddock remarried on July 13, 2018, and A.M.R. was born on July 29, 2018. Paddock was initially listed as the "father" on A.M.R.'s birth

---

[1] Paddock cross-appeals the District Court's denial of her request for a parental interest pursuant to § 40-6-105, MCA. Paddock argues the District Court's interpretation of § 40-6-105, MCA, violates her constitutional rights to due process and equal protection. This Court avoids deciding constitutional issues whenever possible. *Davis v. Davis*, 2016 MT 52, ¶ 10, 382 Mont. 378, 367 P.3d 400. Because we hold that the District Court properly granted Paddock a parental interest pursuant to § 40-4-228, MCA, we need not address the arguments concerning § 40-6-105, MCA.

certificate and was involved in all aspects of childcare for A.M.R.[2] Rehbein gave birth to M.J.R. on October 18, 2021.[3] Paddock was present for M.J.R.'s birth and similarly supported M.J.R.

¶4     Rehbein and Paddock separated in February 2022. Paddock continued to regularly care for the children, and the parties coordinated custody exchanges themselves. On April 14, 2022, Rehbein petitioned to dissolve their marriage. The petition stated the parties did not have any children. Paddock filed a counterpetition that asserted A.M.R. and M.J.R. were children of their marriage and requested a parenting plan. Paddock later petitioned for a determination of parentage, arguing she was entitled to a parental interest in the children pursuant to § 40-6-105, MCA, the presumptive parentage statute.

¶5     The District Court held a bench trial on December 8, 2023, and July 11 and 12, 2024, to address Paddock's asserted parental interest in the children. The District Court heard testimony from both parties and numerous witnesses. Paddock presented several witnesses, including A.M.R.'s biological father, the father of Rehbein's fourth child, and family friends, who all testified that they regarded Paddock as a stable, loving parent to the children. Several witnesses also testified that they observed concerning behavior by Rehbein when she was intoxicated. In support of her position that Paddock did not parent

---

[2] In 2020, Paddock was removed from A.M.R.'s birth certificate after Paddock filed an affidavit of non-paternity. Paddock testified she intended to formally adopt A.M.R. and believed this was the proper procedure to facilitate the adoption. Paddock testified her level of support and care for A.M.R. did not change after the birth certificate modification.

[3] A.M.R. and M.J.R. have different biological fathers.

the children and to refute Paddock's evidence, Rehbein introduced testimony from her own mother, A.M.R.'s therapist, M.J.R.'s biological father, and the biological father's mother. A significant amount of the testimony and evidence addressed the parties' conduct, their relationships with each other and the children, and the children's best interests.

¶6 On October 9, 2024, Rehbein filed a post-trial brief ("Post-Trial Brief"), arguing that the District Court could consider only whether Paddock was entitled to a presumption of parentage under § 40-6-105, MCA, because that was the statute Paddock referenced in her parentage petition. Rehbein asserted the District Court could not award any other parental interest, including a third-party parental interest under § 40-4-228, MCA, on the grounds that Paddock's pleadings did not expressly request that relief.

¶7 The District Court issued detailed findings of fact and conclusions of law in its Decree. Applying M. R. Civ. P. 15(b), the District Court amended the pleadings to consider whether Paddock had a third-party parental interest pursuant to § 40-4-228, MCA. The District Court determined the amendment was warranted because the parties had expressly or impliedly consented to try the issue by presenting evidence related to it.

¶8 The District Court found Paddock acted as a parent to the children, as evidenced by witness testimony, the children's medical and insurance records that identified Paddock as their parent, and the parties' joint tax returns that identified the children as dependents. The District Court considered the conflicting evidence presented by Rehbein but ultimately found Paddock's evidence more persuasive.

4

¶9 Relying on § 40-4-228, MCA, the District Court concluded that Rehbein "consistently engaged in conduct contrary to the parent-child relationship" due to her "struggles maintaining sobriety, concerning parenting practices," and by "regularly and voluntarily" allowing Paddock to care for the children so that Paddock stood *in loco parentis* to the children. The District Court determined that Paddock established a child-parent relationship with the children, as defined by § 40-4-211, MCA, by providing physical care, financial support, companionship, and stability since their birth. The District Court held that a continued relationship with Paddock was in the children's best interest because "[Paddock] is a reliable adult and parent," "the children enjoy spending time with [her]," and "[Paddock] exercises good judgment and can continue to make decisions carefully so that the children's best interests are paramount, and the children are safe and cared for with her." The District Court entered a parenting plan pursuant to the Decree.

## STANDARDS OF REVIEW

¶10 We review a district court's decision to amend the pleadings to conform to the evidence for an abuse of discretion. *Armbrust v. York*, 2003 MT 36, ¶ 13, 314 Mont. 260, 65 P.3d 239; *Glacier Nat'l Bank v. Challinor*, 253 Mont. 412, 416, 833 P.2d 1046, 1049 (1992). We review a district court's conclusions and applications of law de novo for correctness. *Sayler v. Yan Sun*, 2023 MT 175, ¶ 11, 413 Mont. 303, 536 P.3d 399. We review a district court's findings of fact for clear error. *Kulstad v. Maniaci*, 2009 MT 326, ¶ 51, 352 Mont. 513, 220 P.3d 595. A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court clearly misapprehended the effect of the evidence,

5

or if our independent review of the record leaves us definitely and firmly convinced the lower court was otherwise mistaken. *Sayler*, ¶ 11.

## DISCUSSION

¶11    *Issue 1: Did the District Court err by amending the pleadings after trial to consider whether § 40-4-228, MCA, granted Paddock a parental interest?*

¶12    "The purpose of a pleading is to provide notice before trial to the opposing party of the specific relief being sought so that both parties have an opportunity to present evidence on the issues in dispute." *In re Custody of C.J.K.*, 258 Mont. 525, 527, 855 P.2d 90, 91 (1993).  Nevertheless, if certain conditions are satisfied, issues not specifically raised in a civil pleading may be considered by the court: "When an issue not raised in a pleading is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  M. R. Civ. P. 15(b)(2).  A pleading may be amended during or after trial to conform to the evidence presented, but failure to amend does not affect the result of the trial of the unpleaded issue.  M. R. Civ. P. 15(b)(2).

¶13    Under Rule 15(b)(2), implied consent exists when the parties are "put on notice that the issue was being raised, and the issue is actually tried."  *Watters v. City of Billings*, 2019 MT 255, ¶ 32, 397 Mont. 428, 451 P.3d 60 (citations omitted; internal quotations and brackets omitted).  "[W]hen applying the implied consent rule, we consider the interplay of a variety of factors surrounding a party's consent."  *Armbrust*, ¶ 16.  If, during trial, a party acquiesces or fails to object to the admission of evidence as extrinsic to the issues raised in the pleadings, then consent may be implied.  *Hjartarson v. Hjartarson*, 2006 MT 273, ¶¶ 38-39, 334 Mont. 212, 147 P.3d 164.  We have also stated we will consider whether

6

the opposing party had a fair opportunity to defend against the issue or was prejudiced by surprise. *Custody of C.J.K.*, 258 Mont. at 528, 855 P.2d at 91.

¶14   The District Court, citing Rule 15(b)(2), concluded that it could consider whether Paddock was entitled to a third-party parental interest pursuant to § 40-4-228, MCA. The District Court reasoned:

> The case was tried in such a way that it was clear that [Paddock] was asserting her rights to a parenting plan and her rights to a parental interest in the [children]. To the extent they were not specifically pled, the Court deems the pleadings to have been amended to recognize [Paddock's] evidentiary assertion of the criteria set forth in Mont. Code Ann. § 40-4-228, such that the pleadings will conform to the evidence required by civil procedure.

¶15   Rehbein argues that the District Court's conclusions regarding § 40-4-228, MCA, amount to an abuse of discretion; specifically, that the court improperly based its judgment on a legal theory not presented in the pleadings filed by Paddock. Analogizing this case to *Custody of C.J.K.*, Rehbein emphasizes that Paddock's pleadings requested the District Court recognize her as a presumptive parent under § 40-6-105, MCA. Rehbein contends the § 40-4-228, MCA, issue was not tried by the express or implied consent of the parties since it was never raised in the pleadings and because Rehbein objected to the application of § 40-4-228, MCA, in her Post-Trial Brief.

¶16   Paddock responds that the § 40-4-228, MCA, issue was tried by implied consent because both parties introduced evidence that was relevant only to the third-party parental interest analysis, and Rehbein failed to object at trial to Paddock's evidence on the basis that it fell outside the scope of matters to be tried. Paddock characterizes Rehbein's

Post-Trial brief as an untimely attempt to retroactively exclude § 40-4-228, MCA, from the District Court's consideration.

¶17 The record supports the District Court's decision to consider whether Paddock established third-party parental rights pursuant to § 40-4-228, MCA. Rehbein's reliance on *Custody of C.J.K.* is misplaced. The question in that case was whether the issue of immediate primary physical custody of one-year-old C.J.K. was properly before the District Court when the father's counterpetition requested primary physical custody after C.J.K. reached the age of five. *Custody of C.J.K.*, 258 Mont. at 526-27, 855 P.2d at 91. Because the father raised the issue of immediate primary physical custody via a mid-trial motion, this Court reversed and remanded for further proceedings, holding that the mother did not impliedly consent to try the issue due to inadequate notice. *Custody of C.J.K.*, 258 Mont. at 528, 855 P.2d at 91-92. Rehbein claims that, as in *Custody of C.J.K.*, she had no prior notice that Paddock sought third-party parental rights and was denied an opportunity to fully and fairly litigate the issue. Rehbein glosses over two crucial differences that distinguish the circumstances of this case from *Custody of C.J.K.*

¶18 First, the father in *Custody of C.J.K.* made his mid-trial motion for immediate primary custody after the conclusion of the mother's case-in-chief; thus, the mother did not impliedly consent because the issue was first introduced after the mother had presented her case. *Custody of C.J.K.*, 258 Mont. at 527-28, 855 P.2d at 91. In this case, Paddock presented her case before Rehbein, and Paddock raised the issue during her case-in-chief. During Paddock's direct testimony on the first day of trial, Paddock made an offer of proof,

arguing her testimony was relevant to her "alternative pleading" under the "third-party parenting statute." Rehbein made no objection to that issue being outside the scope of the matters to be tried. The sequence of events in this case is demonstrably different from those in *Custody of C.J.K.*

¶19 Moreover, unlike the mother in *Custody of C.J.K.*, Rehbein had ample time to prepare and defend against the merits of the § 40-4-228, MCA, claim. The District Court continued the trial because on the first day—December 8, 2023—there was only sufficient time for Paddock to present her case-in-chief, during which she referenced her alternative theory of reliance on the "third-party parenting statute." The District Court then granted another continuance pursuant to Rehbein's request, citing her need for "additional time . . . to properly prepare for and rebut [Paddock's] testimony and exhibits already admitted into evidence." Rehbein presented her case-in-chief during the final two days of trial, on July 11 and 12, 2024—seven months after Paddock had referenced her "alternative pleading" for third-party parental rights and presented evidence in support of that theory. Rehbein has not demonstrated she was "caught off-guard" and prejudiced by surprise. *Custody of C.J.K.*, 258 Mont. at 528, 855 P.2d at 91.

¶20 Second, after the father in *Custody of C.J.K.* made his mid-trial motion for primary physical custody, the mother immediately moved to stay or continue the proceedings on the basis of surprise. *Custody of C.J.K.*, 258 Mont. at 526-27, 855 P.2d at 91. Rehbein made no such objection or motion on those grounds in this case. Paddock offered substantial testimony and exhibits that related exclusively to the § 40-4-228, MCA, factors:

9

that Rehbein engaged in conduct contrary to the parent-child relationship; that Paddock had established a parent-child relationship with the children; and that it was in the children's best interests to continue that relationship. Rehbein did not object to any of that evidence as falling outside of the scope of issues to be tried. Even when Rehbein lodged an objection to the introduction of evidence of this nature, it was not on the basis of it being outside the scope of the issues to be tried. For example, at the December 8, 2023 hearing, Paddock testified she went to Rehbein's home after being contacted by the children's babysitter and found Rehbein "drunk and passed out" with the children present. Rehbein objected, but only on the basis of hearsay and speculation.

¶21    Considered in their entirety, these factors support the District Court's application of Rule 15(b)(2) in this case. Rehbein had the opportunity to address the § 40-4-228, MCA, claim on the merits, to present evidence refuting it, and was not prejudiced by surprise. The District Court did not abuse its discretion by amending the pleadings after trial to consider whether Paddock had third-party parental rights under § 40-4-228, MCA.

¶22    *Issue 2: Did the District Court err by awarding Paddock a parental interest pursuant to § 40-4-228, MCA?*

¶23    Section 40-4-228, MCA, allows a court to award a parental interest to a nonparent who establishes three conditions by clear and convincing evidence. The nonparent must prove that:

> (1) the existing "parent has engaged in conduct that is contrary to the child-parent relationship";
> (2) "the nonparent has established" "a child-parent relationship" with the child; and

10

(3) "it is in the best interests of the child to continue" the child-parent relationship between the nonparent and the child.

*Sayler*, ¶ 37 (quoting § 40-4-228(2), MCA). A "child-parent relationship" is defined by § 40-4-211, MCA. *Sayler*, ¶ 37; § 40-4-228(2)(b), MCA.

¶24 Rehbein asserts Paddock failed to prove that the mandatory conditions set forth in § 40-4-228(2), MCA, were satisfied by clear and convincing evidence. Rehbein argues the District Court ignored "a large number of record facts showing that the statutory criteria are not met and, at best, debatable." Our task, however, is to determine whether the District Court's findings are clearly erroneous. *Kulstad*, ¶ 51. "We do not consider whether evidence supports findings that are different from those made by the district court." *Kulstad*, ¶ 52. Regardless of whether some of the facts the District Court found to support Paddock's parental interest are "debatable," as Rehbein asserts, it was within the District Court's discretion to resolve that debate in favor of Paddock's parental interest.

¶25 Rehbein directs this Court to conflicting evidence in the record, but she fails to demonstrate how the District Court's findings are not supported by substantial evidence. Rehbein disparages as self-serving the testimony of Paddock and several rebuttal witnesses, but the District Court "sits in the best position to observe and judge witness credibility[,] and we will not second guess its determination regarding the strength and weight of conflicting testimony." *Kulstad*, ¶ 90. The District Court conducted a three-day trial, during which it received evidence and heard testimony from numerous witnesses, including A.M.R.'s therapist, Paddock, Rehbein, and their friends and family who regularly interacted with them and the children. Several of those witnesses testified about Rehbein's

11

problematic alcohol use, their perception that Paddock acted as a parent toward the children, and that Paddock would continue to provide the children with love and stability if awarded a parental interest. Evidence was admitted showing that Paddock was listed as the children's parent for medical insurance purposes, and the parties' jointly filed tax returns for 2018 through 2021 identified Paddock as the primary taxpayer and the children as dependents. There was ample evidence in the record in support of the District Court's findings regarding Paddock's parental interest.

¶26 The District Court acknowledged the conflicting testimony in its findings and did not misapprehend the effect of the evidence. In one illustrative example, while the District Court referenced testimony from witnesses who described the negative impact of alcohol on Rehbein's ability to parent, the District Court also recognized and acknowledged Rehbein's mother's testimony that Rehbein was not currently abusing alcohol and she thought Rehbein was a good parent. Unlike *Sayler*, where this Court reversed because the District Court's analysis "neither referenced § 40-4-228, MCA, nor any of its required elements of proof," *Sayler*, ¶ 42, the District Court in this case entered detailed findings of fact and conclusions of law, which are supported by the record, and addressed the three statutory factors. The District Court did not err by awarding Paddock a third-party parental interest in the children.

## CONCLUSION

¶27 The District Court did not abuse its discretion by amending the pleadings to conform to the evidence on the basis that Rehbein impliedly consented to try the § 40-4-228, MCA,

12

issue. The record supports the District Court's decision to award Paddock a third-party parental interest in the children. The District Court's December 12, 2024 Decree is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

Justice Laurie McKinnon, concurring.

¶28 I concur in the Court's resolution of this case pursuant to § 40-4-228, MCA, affirming the District Court's awarding of a parental interest to Paddock, but I write separately to address the Court's avoidance of assessing the merits of Paddock's request for a parental presumption pursuant to § 40-6-105, MCA.

¶29 Although the Court frames the discussion as a constitutional issue—and Paddock presented this argument as such on appeal, Opinion, ¶ 1 n. 1— the Court need not avoid the issue altogether because the plain language of the statute and rules of statutory construction support a presumption of Paddock's "paternity." A "*person*" is presumed to be the natural father of a child when "the *person* and the child's natural mother are or have been married to each other[.]" Section 40-6-105(1)(a), MCA (emphasis added).

13

¶30    "We interpret a statute first by looking to its plain language." *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (citation omitted). "When the legislature has not defined a statutory term, we consider the term to have its plain and ordinary meaning." *State v. Alpine Aviation, Inc.*, 2016 MT 283, ¶ 11, 385 Mont. 282, 384 P.3d 1035 (quotation omitted). Additionally, when a statute is equally susceptible to two interpretations, one in favor of a natural right and the other against it, the former is to be adopted. Section 1-2-104, MCA.

¶31    Here, the Legislature has not provided for an explicitly gendered definition of "father" relevant to our interpretation of § 40-6-105, MCA. *See* § 40-6-102, MCA (providing definitions for "[p]arent and child relationship," "[p]aternity test," and "'support judgment' or 'support order,'" but not providing specific gendered parental roles for "father" or "mother"). Instead, looking to the plain language of the presumption of paternity provided for by § 40-6-105(1)(a), MCA, Paddock, as an unequivocal "person," is entitled to a presumption of paternity of the children born during her marriage to Rehbein, the children's uncontested natural mother. *See also* 1995 Mont. Laws ch. 418, § 80 (amending § 40-6-105(1)(a), MCA, to omit "man" in favor of "person" and omit "he" in favor of "the person"); § 1-2-105(2) ("Words [in the Mont. Code Ann.] used in the masculine gender include the feminine and neuter."). Paddock and Rehbein remarried on July 13, 2018; A.M.R. was born July 29, 2018; M.J.R. was born in 2021; and the District Court finalized the dissolution of the marriage in 2024. Opinion, ¶ 3. Given this sequence of events, the plain language of § 40-6-105(1)(a), MCA, entitles Paddock to a presumption

14

of paternity for the two children born while she was married to Rehbein. Because § 40-6-105(1)(a), MCA, entitles Paddock to a presumption of paternity, the burden shifts to Rehbein to overcome this presumption, including whether § 40-6-106, MCA, (recognizing parental rights in situations of artificial insemination) is implicated.

¶32 A court should not ascribe its assumptions to the multitude of relationships that appear before it and, indeed, Montana's presumption of paternity statute seemingly understands and anticipates the variety of familial structures our fellow citizens may develop. Here, in the context of a same-sex marriage, Paddock deserves the presumption plainly afforded to her by the statute. I would conclude the District Court erred in determining Paddock did not enjoy a presumption of paternity under § 40-6-105, MCA, by virtue of the children's births occurring during the marriage.

/S/ LAURIE McKINNON

Chief Justice Cory Swanson, concurring.

¶33 I concur with the Opinion. The District Court reached the right outcome, deftly handling an unusual set of facts that did not fit well with the statutes. I write separately in response to Justice McKinnon's Concurrence to explain why Paddock does not enjoy a presumption of paternity in her case.

¶34 The presumption of paternity statute does not fit this situation. It is not a statute designed to argue women in same-sex marriages are covered under the "paternity" or "father" definitions. It is a statute designed to handle the thorny but historically not

15

unknown situation when a man's sperm unites with the mother's egg and produces a child during the course of the marriage, but there is a dispute as to whether the husband's sperm or another man's sperm accomplished the deed.

¶35 That is not at all an issue here. All the parties and all the evidence agree Paddock could not and did not contribute the sperm that fertilized Rehbein's eggs to produce these two children. All the parties agree she is not the biological parent. Hence, the presumption of paternity statute would be an ill-fitting decision mechanism for the District Court. It chose the more appropriate decision mechanism and reached the right result. Neither the District Court nor this Court avoided the issue, we merely refrained from reaching a holding that advanced a novel and unnecessary argument.

/S/ CORY J. SWANSON

16